# LIVERPOOL AND LONDON AND GLOBE INSURANCE COMPANY *v.* KEARNEY.

## ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 85. Submitted November 7, 1900.—Decided January 7, 1901.

The plaintiff in error insured the defendants in error against loss by fire by two policies, one dated in June, 1894, the other in February, 1895, each of which contained the following provision: "The assured under this policy hereby covenants and agrees to keep a set of books showing a complete record of business transacted, including all purchases and sales, both for cash and credit, together with the last inventory of said business; and further covenants and agrees to keep such books and inventory securely locked in a fireproof safe at night, and at all times when the store mentioned in the within policy is not actually open for business, or in some secure place not exposed to a fire which would destroy the house where such business is carried on; and, in case of loss, the assured agrees and covenants to produce such books and inventory, and in the event of

the failure to produce the same, this policy shall be deemed null and void, and no suit or action at law shall be maintained thereon for any such loss." On the night of April 18, 1895, between the hours of one and three A. M., fire accidentally broke out in a livery stable in the town of Ardmore, which was about three hundred yards distant from the plaintiffs' place of business. Efforts to arrest the progress of the conflagration failed, and when it had approached so near to the plaintiffs' place of business that the windows of their store were cracking from the heat and the building was about to take fire, one of the plaintiffs entered the building for the purpose of removing the books of the firm to a safer place, thinking that it would be better to remove them than to take the chances of their being destroyed by fire. He opened an iron safe in the store in which they had been deposited for the night, which was called a fireproof safe, and took them therefrom and to his residence some distance away. The books consisted of a ledger, a cash book, a day book or blotter, and a small paper-covered book containing an inventory that the firm had taken of their stock on or about January 1, 1895. In the hurry and confusion incident to the removal of the books, the inventory was either left in the safe and was destroyed, or was otherwise lost, and could not be produced after the fire. The other books, however, were saved, and were exhibited to the insurer after the fire and were subsequently produced as exhibits on the trial. There was neither plea nor proof that the loss of the inventory was due to fraud or bad faith on the part of the plaintiffs or either of them. An action for the amount of the loss was brought by the insured against the insurance company, on the trial of which the jury gave a verdict in the plaintiffs' favor, on which judgment was entered, which judgment was sustained by the Circuit Court of Appeals. *Held :*

(1) That it was not intended by the parties that the policy should become void unless the fireproof safe was one that was absolutely sufficient against every fire that might occur; but that it was sufficient if the safe was such as was commonly used, and such as, in the judgment of prudent men in the locality of the property insured, was sufficient:

(2) That if the plaintiffs had the right, under the terms of the policy, as undoubtedly they had, to remove their books and inventory from the safe to some secure place, not exposed to a fire which might destroy the building in which they carried on business, it was never contemplated that they should lose the benefit of the policies if, in so removing their books and inventory, the same were lost or destroyed, they using such care on the occasion, as a prudent man, acting in good faith, would exercise.

THE case is stated in the opinion of the court.

*Mr. E. S. Quinton* for plaintiff in error.

*Mr. A. C. Cruce* and *Mr. W. I. Cruce* for defendants in error.

Mr. Justice Harlan delivered the opinion of the court.

This action was brought to recover the amount alleged to be due on two policies of fire insurance issued by the Liverpool and London and Globe Insurance Company—one dated June 15, 1894, for $2500 and the other dated February 11, 1895, for $1000 —each policy covering such losses as might be sustained by the insured, Kearney & Wyse, in consequence of the destruction by fire of their stock of hardware in the town of Ardmore, Indian Territory.

Each policy contained the following clause, called the iron-safe clause : " The assured under this policy hereby covenants and agrees to keep a set of books, showing a complete record of business transacted, including all purchases and sales, both for cash and credit, together with the last inventory of said business ; and further covenants and agrees to keep such books and inventory securely locked in a fireproof safe at night, and at all times when the store mentioned in the within policy is not actually open for business, or in some secure place not exposed to a fire which would destroy the house where such business is carried on ; and, in case of loss, the assured agrees and covenants to produce such books and inventory, and in the event of the failure to produce the same, this policy shall be deemed null and void, and no suit or action at law shall be maintained thereon for any such loss."

The insurance company insisted in its defence that the terms and conditions contained in this clause of the policies had not been kept and performed by the insured.

There was a verdict and judgment in favor of the plaintiffs in the United States Court for the Southern District of the Indian Territory, and that judgment was affirmed in the United States Court of Appeals for that Territory.

The insurance company sued out a writ of error to the United States Circuit Court of Appeals for the Eighth Circuit, and that court affirmed the judgment. 94 Fed. Rep. 314.

The controlling facts are thus (and we think correctly) stated in the opinion of Judge Thayer, speaking for the court below : " On the night of April 18, 1895, between the hours of one and

three A. M., a fire accidentally broke out in a livery stable in the town of Ardmore, which was about three hundred yards distant from the plaintiffs' place of business. Efforts to arrest the progress of the conflagration failed, and when it had approached so near to the plaintiffs' place of business that the windows of their store were cracking from the heat and the building was about to take fire, one of the plaintiffs entered the building for the purpose of removing the books of the firm to a safer place, thinking that it would be better to remove them than to take the chances of their being destroyed by fire. He opened an iron safe in the store, in which they had been deposited for the night, which was called a fireproof safe, and took them therefrom, and to his residence, some distance away. The books consisted of a ledger, a cash book, a day book or blotter, and a small paper-covered book containing an inventory that the firm had taken of their stock on or about January 1, 1895. In the hurry and confusion incident to the removal of the books, the inventory was either left in the safe and was destroyed, or was otherwise lost, and could not be produced after the fire. The other books, however, were saved, and were exhibited to the insurer after the fire, and were subsequently produced as exhibits on the trial. There was neither plea nor proof that the loss of the inventory was due to fraud or bad faith on the part of plaintiffs, or either of them. The trial judge charged the jury that the set of books which had been kept and which were produced on the trial ' were substantially in compliance with the terms of the policy upon that subject,' and no exception was taken by the defendant to this part of the charge."

It was also said in the same opinion: " The books, though used at the trial as exhibits, do not form a part of the record. For these reasons no question arises as to the sufficiency of the set of books that was kept which we are called upon to consider. It must be taken for granted that it was a proper set of books, as the trial court held. The only substantial ground for complaint seems to be that the inventory was not produced."

The argument in behalf of the defendant assumes that the insurance company is entitled to a literal interpretation of the words of the policies. But the rules established for the con-

struction of written instruments apply to contracts of insurance equally with other contracts. It was well said by Nelson, C. J., in *Turley* v. *North American Fire Insurance Co.*, 25 Wend. 374, 377, referring to a condition of a policy of insurance requiring the insured, if damage by fire was sustained, to produce a certificate under the hand and seal of the magistrate or notary public most contiguous to the place of the fire setting forth certain facts in regard to the fire and the insured, that "this clause of the contract of insurance is to receive a reasonable interpretation; its intent and substance, as derived from the language used, should be regarded. There is no more reason for claiming a strict literal compliance with its terms than in ordinary contracts. Full legal effect should always be given to it for the purpose of guarding the company against fraud or imposition. Beyond this, we would be sacrificing substance to form—following words rather than ideas."

To the general rule there is an apparent exception in the case of contracts of insurance, namely, that where a policy of insurance is so framed as to leave room for two constructions, the words used should be interpreted most strongly against the insurer. This exception rests upon the ground that the company's attorneys, officers or agents prepared the policy, and it is its language that must be interpreted. *National Bank* v. *Insurance Co.*, 95 U. S. 673, 678–9; *Moulor* v. *American Life Ins. Co.*, 111 U. S. 335, 341.

Turning now to the words of the policies in suit, what is the better and more reasonable interpretation of those provisions so far as they relate to the issues in this case? The covenant and agreement "to keep a set of books, showing a complete record of business transacted, including all purchases and sales, both for cash and credit, together with the last inventory of said business," should not be interpreted to mean such books as would be kept by an expert bookkeeper or accountant in a large business house in a great city. That provision is satisfied if the books kept were such as would fairly show, to a man of ordinary intelligence, "all purchases and sales, both for cash and credit." There is no reason to suppose that the books of the plaintiff did not meet such a requirement.

That of which the company most complains is that the insured did not produce the last inventory of their business, and removed the books and inventory from the fireproof safe in which they had been placed the night of the fire. It will be observed that the insured had the right to keep the books and inventory either in a fireproof safe or in some secure place not exposed to a fire that would destroy the house in which their business was conducted. But was it intended by the parties that the policy should become void unless the fireproof safe was one that was absolutely sufficient against every fire that might occur? We think not. If the safe was such as was commonly used, and such as, in the judgment of prudent men in the locality of the property insured, was sufficient, that was enough within the fair meaning of the words of the policy. It cannot be supposed that more was intended. If the company contemplated the use of a safe perfect in all respects and capable of withstanding any fire however extensive and fierce, it should have used words expressing that thought.

Nor do the words " or in some secure place not exposed to a fire which would destroy the house where such business is carried on " necessarily mean that the place must be absolutely secure against any fire that would destroy such house. If, in selecting a place in which to keep their books and last inventory, the insured acted in good faith and with such care as prudent men ought to exercise under like circumstances, it could not be reasonably said that the terms of the policy relating to that matter were violated. Indeed, upon the facts stated, the plaintiffs were under a duty to the insurance company to remove their books and inventory from the iron safe, and thereby avoid the possibility of their being destroyed in the fire that was sweeping towards their store, provided the circumstances reasonably indicated that such a course on their part would more certainly protect the books and inventory from destruction than to allow them to remain in the safe. If they believed, from the circumstances, that the books and inventory would be destroyed by the fire if left in the safe, and, if, under such circumstances, they had not removed them to some other place and the books or inventory had been burned

while in the safe, the company might well have claimed that the inability of the insured to produce the books and inventory was the result of design or negligence, and precluded any recovery upon the policies. We are of opinion that the failure to produce the books and inventory, referred to in the policy, means a failure to produce them if they are in existence when called for, or if they have been lost or destroyed by the fault, negligence or design of the insured. Under any other interpretation of the policies, the insured could not recover if the books and inventory had been stolen, or had been destroyed in some other manner than by fire, although they had been placed "in some secure place not exposed to a fire" that would reach the store. If the plaintiffs had the right, under the terms of the policy, as undoubtedly they had, to remove their books and inventory from the safe to some secure place not exposed to a fire which might destroy the building in which they carried on business, surely it was never contemplated that they should lose the benefit of the policies if, in so removing their books and inventory, they were lost or destroyed, they using such care on the occasion as a prudent man, acting in good faith, would exercise. A literal interpretation of the contracts of insurance might sustain a contrary view, but the law does not require such an interpretation. In so holding the court does not make for the parties a contract which they did not make for themselves. It only interprets the contract so as to do no violence to the words used and yet to meet the ends of justice.

We perceive no error in the view taken by the court below; and having noticed the only questions that need to be examined, its judgment is

*Affirmed.*