### FIRE INSURANCE.

[Circuit Court of Harrison County.]

CONNECTICUT FIRE INSURANCE CO. v. J. LYLE CLARK, RECEIVER OF CLARK BROS.

Decided, May Term, 1902.

*Insurance—Books of Account Necessary to be Kept—Under an "Iron Safe Clause" Covering Merchandise in a Country Store—Charge of Court—Error in, Cured by Special Verdict.*

1. Where the books of account kept by the proprietor of a country store are such as would fairly show to a man of ordinary intelligence the business transacted, including the stock on hand and the purchases and sales made, the provision known as the "iron safe clause" in a policy of insurance covering the stock is satisfied.
2. An erroneous charge of the court to the jury is not a ground for reversal of the judgment, where it appears from a special verdict that the charge was not prejudicial.

COOK, J.; BURROWS, J., and LAUBIE, J., concur.

Heard on error.

Defendant in error recovered a judgment in the court of common pleas against plaintiff in error upon a policy of insurance for loss sustained upon a stock of merchandise caused by fire. The principal controversy below, and also in this court, is upon the provision of the policy known as the "iron safe clause," the provision being as follows:

"The insured in this policy hereby covenants and agrees to take an inventory of the stock covered by the policy at least once every twelve months during the life of this policy, and unless such inventory has been taken within one year prior to the date of the issuing of this policy, one shall be taken in detail within thirty days thereafter; and the insured further covenants and

586   CIRCUIT COURT REPORTS—NEW SERIES.

Connecticut Fire Ins. Co. v. Clark, Receiver. [Vol. II, N. S.

agrees to keep a set of books showing a complete record of the business transacted, including all purchases and sales both for cash and credit during the life of the policy; keeping them securely locked in a fire proof safe at night and at times when the store mentioned in this policy is not actually open for business, or in some secure place not exposed to fire which would destroy the building where the business is carried on; and that in case of loss the insured is to produce said books and inventory, and in the event of failure of the insured to produce the same the policy shall be null and void.''

It is claimed that the books kept were not such as were required by this provision of the policy. Counsel insist that there must be a strict compliance with the conditions: ''That the books must show a complete record of the business transacted,'' and that the insurance company is entitled to a literal interpretation of the words of the policy.

Policies of insurance should be construed as other written contracts. Reasonable interpretation is all that is required. In *Turley* v. *Fire Ins. Co.*, 25 Wend., 374, 377, Nelson, C. J., in referring to a condition of a policy of insurance requiring the insured, if damage by fire was sustained, to procure a certificate under the hand and seal of the magistrate or notary public most contiguous to the place of the fire, setting forth certain facts in regard to the fire and the insured, said:

''This clause of the contract of insurance is to receive a reasonable interpretation; its intent and substance as derived from the language used should be regarded. There is no more reason for claiming a strict literal compliance with its terms than in ordinary contracts. Full legal effect should always be given to it, for the purpose of guarding the company against fraud or imposition. Beyond this, we would be sacrificing substance to form—following words rather than ideas.''

In the case of *The Liverpool & L. & G. Ins. Co.* v. *Kearney,* 180 U. S., 136 (21 Sup. Ct. Rep., 326), Justice Harlan, in delivering the opinion of the court, says:

''Turning now to the words of the policies in suit, what is the better and more reasonable interpretation of those provisions so far as they relate to the issues in this case?

''The covenant and agreement 'to keep'a set of books showing a complete record of business transacted, including all purchases

and sales, both for cash and credit, together with the last inventory of said business,' should not be construed to mean such books as would be kept by an expert bookkeeper or accountant in a larger business house in a great city. That provision is satisfied if the books kept were such as would fairly show a man of ordinary intelligence all purchases and sales both for cash and credit.''

The policy issued to Clark Brothers, as far as the personal property was concerned, was upon a stock of merchandise in a country store situated in a small village. The books kept, it is true, were not very methodical. There was, however, the inventory book, showing the inventory taken within a year; and a book showing all sales, both for cash and upon credit. Some goods were exchanged for produce, but the amount of such exchange and its effect upon the stock purchased could be ascertained with reasonable certainty from the sales book. There was an invoice book. True, the invoices were not all copied in the book, some original invoices being pasted in the book without copying. A large number were not pasted in the book at the time of the fire, but were placed in afterwards, they being kept in the safe. There was no claim that there was any fraud or that any invoices were placed in the book for goods not actually purchaser since the inventory made in January previously.

We, therefore, are of opinion that the books kept were such as would fairly show to a man of ordinary intelligence the business transacted; the stock on hand in January and the purchases and sales, both for cash and credit subsequently made.

The other question made is upon the charge of the court. The court submitted the question to the jury as to whether or not the books kept by Clark Brothers were in accordance with the iron safe clause of the policy, and properly so submitted the question. It was a question of fact to be determined by the jury, under proper instructions of the court as to what would be a compliance with this provision.

The averment of the petition was that plaintiff had duly kept and performed all the conditions of the policy, except as to furnishing proofs of loss, and that that condition had been waived by the insurance company.

In the charge the court, inadvertently no doubt, stated to the jury that it was necessary for the plaintiff to satisfy the jury by a preponderance of the evidence that they had kept the necessary books, and also furnished the necessary proofs of loss, unless they should find the company had waived the same. There being no allegation in the pleadings that the company had waived the keeping of the necessary books under the iron safe clause, and no proof of any waiver, that part of the charge was clearly erroneous and would be fatal to the judgment, provided it was prejudicial.

Special interrogatories were submitted to the jury at the request of defendant below, one of the interrogatories being as follows:

"Were the requirements of the iron safe clause in the policy complied with?"

The jury answered:

"They were."

The question was direct, specific and certain; not were the provisions complied with or waived, but were the necessary books kept and preserved; and the answer was:

"They were."

The error of the court in the charge could, therefore, have had no effect upon the jury, and plaintiff in error was in no manner prejudiced.

In the case of *Chase* v. *Brundage*, 58 Ohio St., 517, the court held:

"It is the province of the jury and not of the court, to determine whether there was such agreement, which must be done from all the evidence; but error in the failure to submit that question to the jury by the general charge of the court or refusal to charge, is cured, where it is submitted at the request of a party by interrogatories calling for a special finding of the fact, and is determined by such special finding returned by the jury, consistent with the general verdict."

On page 526, Williams, J., says:

"The special findings are consistent with the general verdict, and cured the error in the general charge of the court, and in

its refusal of the instruction requested. They find the essential facts which fix the legal rights of the parties, and cover the questions that the plaintiff desired to have submitted to the jury by the instructions which were refused.''

Applying the same principle to this case the error was not prejudicial. The judgment will be affirmed.

*Mooney & McCoy*, for plaintiff in error.

*Hollingsworth & Cunningham*, for defendant in error.

---

### BILL OF EXCEPTIONS.