## QUEEN INS. CO. OF AMERICA v. MEYER MILLING CO.
### No. 8730.

Circuit Court of Appeals, Eighth Circuit.
Sept. 15, 1930.

886

Lyon Anderson, of St. Louis, Mo. (Harold F. Hecker and Leahy, Saunders & Walther, all of St. Louis, Mo., on the brief), for appellant.

Harry L. Thomas, of Kansas City, Mo. (Dudley D. Thomas, Jr., of Carrollton, Mo., and E. C. Hartman and Fordyce, Holliday & White, all of St. Louis, Mo., on the brief), for appellee.

Before STONE and VAN VALKEN-BURGH, Circuit Judges, and OTIS, District Judge.

OTIS, District Judge.

The Meyer Milling Company, appellee here, owned a brick building at the northeast corner of Eighth and Howard streets in St. Louis, which was leased to and used as a trunk factory by the Rice-Stix Dry Goods Company. By fire walls, one running east and west through the building and the other north and south to the center of the building, it was internally divided into three sections. One of these, the northeast section, on a certain fire map introduced in evidence was designated as "Building A." No street numbers were on the building, but it covered ground assigned, by the city's house and numbering department, odd numbers on Howard street from 717 to 729, inclusive. Building A was on ground numbered 723–729 Howard street.

The Queen Insurance Company of America, the appellant, on April 14, 1924, issued to appellee a policy of fire insurance in the amount of $24,000, the coverage in which was in the policy described as—

"On the * * * story composition roof brick building, including foundations, plumbing, electrical wiring and stationary heating, lighting and ventilating apparatus and fixtures thereon; also all permanent fixtures, stationary scales and elevators, belonging to and constituting a part of said building; occupied as mercantile, situated 723–9 Howard Street, City of St. Louis, State of Missouri. This insurance shall also cover under this item, if the property of the owner of building, door and window screens and storm doors and windows, belonging to above described building, while attached thereto or stored therein."

Other policies of fire insurance, admittedly covering the whole of appellee's building, had been issued previously, one by the American Alliance Insurance Company and the other by the Superior Fire Insurance Company.

A fire occurred in the appellee's building February 13, 1925, damaging the whole thereof in the amount of $28,972.03. The damage to that part which on the fire map was designated "Building A" was $1,510.44. The claim of appellant is that its liability is only in that amount. That amount it tendered appellee before trial. At the trial it asked the court to instruct the jury to find for the

plaintiff in the amount of $1,510.44, with interest.

Of the two principal questions in the case, one is this: Did appellant insure the whole building or that part only designated in the fire map, Building A?

After the fire, when appellant denied liability (except in the limited amount), the agent for the two other companies paid appellee the total amount of its claim against appellant, less the $1,510.44 which the appellant admitted owing, taking, however, appellee's notes. Subsequently this agent was reimbursed by his principals for what he had thus paid, the agent turning over to his principals the notes appellee had given him. On these facts arises the second principal question in the case, which is: Was the appellee in this suit, within the meaning of section 1155, R. S. Mo. 1919, a real party in interest entitled to sue as such?

■ 1. In connection with the first of the two principal questions, certain rules applicable to all contracts including contracts of insurance are to be kept in mind: First, if in the language used in a written contract there is no ambiguity, then matters extrinsic to the contract may not be considered in construing it. 13 Corpus Juris, 771. So, if in a contract of insurance there is no ambiguity as to the coverage, other evidence than the contract may not be received. 26 Corpus Juris, 77. Second, if in a written contract there is ambiguity, as in a contract of insurance as to the coverage thereof, at least if the ambiguity is a latent one, extrinsic evidence is admissible to discover the real intent of the contracting parties. 26 Corpus Juris, 77; Clark et al. v. Insurance Co., 8 How. 235, 246, 12 L. Ed. 1061; Scottish Union, etc., Ins. Co. v. McKone (8 C. C. A.) 227 F. 813, 815; Arlington Manufacturing Co. v. Insurance Co. (2 C. C. A.) 107 F. 662, 665; Still v. Insurance Co., 185 Mo. App. 550, 553, 172 S. W. 625. Third, a written contract if ambiguous is to be construed most strictly against him who drew it; if a contract of insurance, against the insurer who prepared it and liberally in favor of the insured. 26 Corpus Juris, 72; Liverpool, etc., Insurance Co. v. Kearney, 180 U. S. 132, 21 S. Ct. 326, 45 L. Ed. 460.

■ It is not contended that in the policy here there is patent ambiguity. To discover latent ambiguity it is, of course, necessary and for that preliminary purpose proper to go outside the instrument and to consider evidence, not yet to discover the real intent of the parties (which is a matter that must await determination that there is latent ambiguity), but to reveal the facts which existed when the words of the instrument were used, so that by comparing the words used with the facts it may be ascertained whether the words aptly fit the facts. 2 Corpus Juris, 1314. If they do not, then there is latent ambiguity. When that has been ascertained, extrinsic proof as to the real intent is competent.

We illustrate the foregoing general observation thus: A enters into a written contract with B by which he agrees to sell and B agrees to buy A's house for $5,000. There is no patent ambiguity in that contract. But the fact is, A has two houses. Proof of that fact shows a latent ambiguity in the written contract. It is then competent to prove by extrinsic evidence what house was really intended by A and B as the subject-matter of the written contract. For a similar illustration, see Lycoming Mut. Ins. Co. v. Sailer, 67 Pa. 108, 112.

■ Now the policy here purported to insure "the * * * building, including * * * stationary heating * * * apparatus * * *; also * * * elevators * * * situated 723–9 Howard Street. * * *" Going to that location, one would find no building bearing the numbers 723–9 or any numbers, but by consulting city maps he would find these house numbers had been given certain ground at Eighth and Howard streets. There he would find a building, one integral structure, a "composition roof brick building," such as that described in the policy of insurance. He would find only a part of this building on ground to which numbers 723–729 had been assigned, the whole covered ground assigned numbers 717 to 729, inclusive. In the part standing on 723–729 he would find no "stationary heating * * * apparatus." He would find in it no "elevators." He would find, indeed, that this part as a usable building was in no sense a unit. There were not even stairways connecting its several floors. Externally this part was separated from adjacent parts only by imaginary lines. He would find, in other words, when attempting to apply the description in the policy to the facts, that in part that description, construed strictly, fitted one thing, to wit, a section or subdivision of the building, and, in part, it fitted another thing, to wit, the building as a whole. He would find in the policy two possible meanings, that is, ambiguity—a latent ambiguity, because only to be discovered on attempting to fit the description in the policy to the facts.

888

Since there was latent ambiguity in the language of the policy setting out its coverage, then certainly it was proper to take evidence as to what the parties really intended should be covered. And if there were any substantial evidence to support a finding that both parties (not only one of them) intended that the policy should cover the whole building of appellee, then the court below did not err in submitting that issue to the jury. We are not here concerned with the weight of the evidence on this issue, but with whether there was any substantial evidence justifying the submission of the issue.

There was direct evidence (as well as circumstantial) as to what was the intention of the appellee. Appellant's agent who solicited the business himself testified that the only instructions he had from appellee were "to insure the building at the northeast corner of 8th and Howard." Nothing was said to him which could possibly be construed as restricting the insurance desired to the so-called "Building A" or to any subdivision of the whole building. By "the building at the northeast corner of 8th and Howard" appellee understood and meant the whole integral structure at that location.

While there was direct evidence, the testimony of the same agent of appellant, that the appellant intended to insure only Building A, there were certainly circumstances in evidence indicating an intention of insuring the whole building. The coverage in the policy of elevators and heating apparatus, already noted, none of which was in Building A, was one such circumstance. The amount of insurance written on the building, which very probably was greater than the whole value of Building A, was another. The reference in the coverage to "the building" and the omission of any express restriction to a subdivision of the building were other and quite significant circumstances. In these alone was certainly substantial evidence that appellant intended to insure the whole building. There was then no error in submitting to the jury the issue whether the parties intended that the whole building should be covered.

It was not a situation which required the appellee to proceed in equity for a reformation of the policy. Such a course would have been the proper one if the written contract did not at all evidence the real intent of the contracting parties. It was not a necessary course where the real intent was evidenced, but ambiguously, by the written contract. 26 Corpus Juris. 107. Appellant does not question this well established rule.

2. Assuming now that the policy here covered appellee's entire building, we come to the second principal question in the case: Did appellee have any legal right either to sue for or to recover the excess beyond $1,510.44 of its loss which had already been paid to it by the agent of other insurance companies and for which its notes had been given. In a suit for that excess, was appellee the real party in interest?

Section 1155, R. S. Mo. 1919, provides that:

"Every action shall be prosecuted in the name of the real party in interest, except as otherwise provided in the next succeeding section; but this section shall not be deemed to authorize the assignment of a thing in action not arising out of contract."

It is not questioned that one of the effects of this section is to defeat the maintenance of an action by one who has no real interest in the result of the litigation.

If upon the facts of this case the American Alliance Insurance Company and the Superior Insurance Company may be said to have acquired a right of contribution from appellant as to the excess beyond $1,510.44 which appellee received it must be said we think that appellee had no interest whatever in that excess.

Assume, for example, that two insurance companies, X and Y, have each insured against fire A's house and that he has sustained a fire loss amounting to $10,000. X pays the full amount. Y pays nothing. A, having been fully indemnified, has no claim against Y and cannot maintain a suit against Y. But X has an independent cause of action against Y for $5,000 based on the right of contribution. And if X has paid, not the full loss, but $8,000, A, not having been fully indemnified, has a cause of action against Y, not for $10,000, the whole amount of his loss, but for $2,000. X has a cause of action against Y for $3,000, based on the right of contribution. X is not subrogated to Y's liability to A beyond $2,000 because A has no claim as against Y for more than $2,000. 26 Corpus Juris, 456; Austin v. Insurance Co., 232 Mass. 214, 122 N. E. 382, 384; Home Insurance Co. v. Railroad Co., 71 Minn. 296, 74 N. W. 140. Contribution and subrogation are fundamentally distinguishable, and those cases, such as Firemen's Ins. Co. v. Bremner (8 C. C. A.) 25 F.(2d) 75, 76, which hold that where an insured has been paid by an insurer only a part of a fire loss caused by a tort-feasor, the insured still may sue the tort-feasor for the whole loss, holding as trustee

for the insurer what he recovers beyond what the insurer has paid, have no application. In that situation the insurer has no independent claim against the tort-feasor. Even if the insurer has paid the whole loss, still the insurer has no independent claim against the tort-feasor. It is only subrogated to the claim of the insured, although, by statute, it may sue independently and in its own name.

The cases, such as Firemen's Ins. Co. v. Bremner, supra, dealing with subrogation, and holding that where an insured has been paid a part of his loss by an insurer but still has some claim against a tort-feasor who caused the loss, he is a real party in interest in a suit to recover the whole loss from the tort-feasor, rest that conclusion partly on the theory that "the right of action for the entire loss is single and cannot be split and separately maintained by the owner and the various insurers who have paid parts of the loss." But that theory does not fit facts from which the right of contribution arises. The cause of action for contribution which one insurer has against another does not come at all from the contract which the second insurer has with the insured but had a wholly different origin. It is "founded on principles of equity and natural justice." It comes from "the application of principles of equity to the condition in which the parties are found in consequence of some of them, as between themselves, having done more than their share in performing a common obligation." It is based on the theory of implied contract between all insurers against the same risk. 13 Corpus Juris, 821, 822. So the causes of action of the insured for a balance due by one insurer and of another insurer for contribution are not one single cause, which is split, but two separate and independent causes.

Appellant earnestly urges upon us this distinction between subrogation and contribution. But whether the distinction benefits appellant depends on the answer to this question: Did the American Alliance Insurance Company and the Superior Insurance Company unconditionally pay appellee that part of appellant's liability to appellee which was not tendered to appellee, being the difference between $1,510.44 and $10,225.42, the total amount of appellee's original claim against appellant? If they did pay this difference, which was the whole amount in controversy, so that appellee was absolutely indemnified, they were entitled to contribution in that amount from appellant and appellee had no interest entitling it to sue. If they did not pay it unconditionally, they acquired no right

to contribution. The testimony relevant to this matter was as follows:

One Schmitz, who, at the time the several policies were written, was secretary of appellee and handled insurance matters for it, testified that the total loss, less $1,510.44, was not paid by other companies, although demanded of them, but that it was advanced as a loan by one Felker, agent for the companies other than appellant, being the agent who had written the policies. The payments were made by Felker's personal check and appellee gave its note or notes to Felker for the amount advanced. It was the understanding of Schmitz that Felker was advancing this money, not for the insurance companies, but on his own account, that he might retain for his agency appellee's insurance business. Felker, the agent, testified to the same general effect as to the transaction between appellee and himself. According to his testimony, appellee gave him two notes which he held for a few weeks and then sold to the insurance companies, his principals. The president of the appellee company, Mr. Meyer, testified appellee had been paid its full loss, less $1,510.44, by the companies other than appellant and by Felker; that two notes were given Felker for the total amount advanced by him, which was $8,703.87; that this amount on the books of the appellee was divided between the American Alliance Insurance Company, which was credited with $4,747.57, and the Superior Insurance Company, which was credited with $3,956.30. The notes were for these amounts. One of the notes was in the form following:

"St. Louis, Missouri,

"February 18, 1926.

"For Value Received, we hereby promise to pay to Arthur F. Felker, one day after collection from Queen Insurance Company of proceeds of Policy No. 1212, the sum of four thousand seven hundred forty-seven dollars and fifty-seven cents ($4747.57), which said sum so last mentioned, without interest, we do promise to pay out of the proceeds of the collection of said claim against the Queen Insurance Company when and if collection be made from them.

"Meyer Milling Company.

"By F. P. Meyer (Signed) President."

It was the further testimony of Mr. Meyer that appellee had not employed attorneys to institute and conduct this case and that the whole matter was a quarrel between insurance companies.

Now, from all of this testimony it is perhaps possible to conclude that Felker, the

agent, personally and voluntarily and without any previous understanding from his principals that he would be reimbursed by them, advanced out of his own funds $8,703.87 to appellee to be repaid him in the uncertain event the appellee would recover that amount from appellant, otherwise never to be repaid. That is a possible conclusion, whatever strain it may place on credulity. But certainly also it is a possible conclusion, and the much more reasonable, that Felker made the advance to appellee for and on behalf of the insurance companies. That was the view of the trial judge who went even further when, in his charge, by way of comment on the evidence, he said: "It seems that the American Alliance Insurance Company and the Superior Insurance Company entered into an arrangement with the plaintiff in this case, by which they paid it all the entire loss in this case, except $1510.44. I think there is but one conclusion to be drawn from what happened."

But the conclusion that the other insurance companies advanced to appellee the amount of its claim against appellant, less $1,510.44, and it is the most favorable to the appellant that can be drawn from the evidence, does not show in the companies other than appellant a right to contribution from appellant. They did not pay the whole loss, less $1,510.44. The advance of money which through their agent they made to appellee was not an absolute payment. It was a conditional payment only. It was to become absolute, as the notes taken show, upon the happening of a possible future event, the failure of appellee to recover from appellant. This conditional payment obviously was made upon the theory that appellant might not be liable at all beyond its admitted liability, in which event the other companies would be bound to pay but would have no right of contribution. So appellee was not absolutely indemnified with the effect of losing its interest, except as to $1,510.44, in its claim against appellant.

Suppose that at the time the American Alliance Insurance Company through its agent advanced $4,747.57 to appellee, taking appellee's note therefor, it had instituted suit against appellant for contribution. To sustain that suit it would have been required to prove it had unconditionally paid appellee the amount involved. Clearly it would not have proved that by proving it had advanced $4,747.57 to appellee which appellee was either bound or might be bound to repay. Appellant would have a complete defense in any such suit. Appellant could contend and rightly contend that appellee had not been indemnified except in the event it should turn out that appellant was never liable at all for the $4,747.57 advanced. And proof that appellant was never liable, of course, would itself defeat the suit for contribution. The interest of the American Alliance Insurance Company in appellee's claim against appellant for $4,747.57 (a part of its whole claim) comes into existence when the claim has been paid. Until that time, and therefore throughout the present case, appellee's interest is undiminished.

Appellant's second contention, that appellee was not the real party in interest, must be resolved against it.

The judgment below is affirmed.