## GULF REFINING CO. et al. v. HOME IN-DEMNITY CO. OF NEW YORK.

### No. 10181.

Circuit Court of Appeals, Eighth Circuit.
July 18, 1935.

WOODROUGH, Circuit Judge, dissenting.

E. W. Moorhead, of Little Rock, Ark. (Robert E. Wiley, of Little Rock, Ark., and David S. Partain and Theron W. Agee, both of Van Buren, Ark., on the brief), for appellants.

Thomas S. Buzbee, of Little Rock, Ark. (H. T. Harrison, A. S. Buzbee, and Edward L. Wright, all of Little Rock, Ark., on the brief), for appellee.

Before STONE, WOODROUGH, and BOOTH, Circuit Judges.

STONE, Circuit Judge.

The ancillary receiver of the Southern Surety Company, of New York, filed an action against the Home Indemnity Company, New York, as surety on the bond of the Southern which had been filed with the

Insurance Commissioner of the State of Arkansas to qualify the latter company to transact business in Arkansas. The Home defended on the ground that payments theretofore made by it under the bond would cancel any claim by the receiver. The receiver conceded this defense. This answer of the Home also contained a motion to make various claimants against the Southern additional parties; that the cause be transferred to the equity side to prevent multiplicity of suits; and that the rights of such claimants against it be adjudicated. Various claimants were so brought in. In the adjudication of these claims, there arose a controlling issue as to whether the bond of the Home covered losses on casualty business written by the Southern as well as surety and guaranty business or covered only surety and guaranty business. The court construed the bond as covering only surety and guaranty business. Therefore, it found for certain of the claimants which had suffered losses under surety and guaranty contracts written by the Southern and against those claimants where the losses were under purely casualty contracts. From the latter determination, the Gulf Refining Company and other casualty claimants bring this appeal.

The sole issue here has to do with the construction of the bond given by the Home and is whether it includes casualty contracts written by the Southern or is confined to surety and guaranty contracts of the Southern. The bond is as follows:

"Guaranty and Surety Company's Bond.
"Know All Men By These Presents:

"That, we Southern Surety Company of New York as principal, and The Home Indemnity Company a corporation organized under the laws of the State of New York, as surety, are held and firmly bound unto the State of Arkansas in the sum of Fifty Thousand and No/100 ($50,000.00), lawful money of the United States, for the payment of which well and truly to be made, we hereby bind ourselves, our successors and assigns, jointly and severally and finally by these presents.

"The conditions of the above obligations are such that:

"Whereas: The said principal has filed its charter and statement and in other respects conformed to the requirements of the Statutes for the transaction of a Guaranty and Surety Insurance business in Arkansas; and,

"Whereas, The said Company proposes to enter this State (or continue in this State) for the purpose of transacting a Guaranty and Surety Insurance business.

"Now, Therefore: if the said principal shall promptly pay, when due, all claims and obligations arising or accruing in this State by virtue of any bond or contract made by said principal; and all amounts due the State of Arkansas, by virtue of statute, and in all respects comply with the laws of this State, then this obligation shall become void otherwise to remain in full force and effect.

"Witness our hands and seals this 17th day of December, 1930.

"Southern Surety Company of New York,

"By Frank T. Gilson,
"Principal Vice President.
"Attest:
"Paul Brown, Assistant Secretary.
"The Home Indemnity Company,
"By J. A. Diemand,
"Executive Vice President.
"Surety.
"By C. Martindale, Secretary.
"Countersigned:
"By W. M. Apple,
"(Licensed Resident Agent for Arkansas)."

Appellants urge three matters: First, that the bond provides, as its condition, that the Southern "shall promptly pay, when due, all claims and obligations arising or accruing in this State by virtue of any bond or contract made by" (italics inserted) and, since this is an insurance contract and they (as beneficiaries) are entitled to a liberal construction of the contract, such language is capable of and should be construed as covering their contracts which were made in the state. Second, that if the bond, so construed, is broader than the statutory requirements under which it was given that does not prevent its binding force. Third, that the statutory provisions under which the bond was given require a coverage of all business (including casualty) done by the Southern within the state.

These contentions may be disposed of together. The sole purpose of all contract construction is to ascertain the intention of the parties to the contract. The rule that insurance contracts are to be construed against the insurer is purely a rule of construction which comes into play as an aid

to construction only when, after using all other effort to ascertain the intention of the parties, the contract is yet ambiguous as to which of two things was intended— one favorable to the insurer and the other to the insured. It is not at all a rule to be used in *seeking* a meaning favorable to the insured. It is the last straw moving the scale which has been left uncertain by an ambiguity.

Some question may be made as to the applicability of this rule here. It is an old rule of contract construction that language must, if ambiguous, be construed against him who uses it because it is a natural inference that the user would make plain what is in his favor. It is really an application of this general rule to contracts of insurance which has given rise to the statements thereof as to insurance contracts. The reason for the rule is that insurance contracts are nearly always carefully prepared by the insurers and the language therein is their careful selection. Aschenbrenner v. U. S. Fidelity & G. Co., 292 U. S. 80, 84, 54 S. Ct. 590, 78 L. Ed. 1137; Stipcich v. Metropolitan Life Ins. Co., 277 U. S. 311, 322, 48 S. Ct. 512, 72 L. Ed. 895; Mutual Life Ins. Co. v. Hurni Packing Co., 263 U. S. 167, 174, 44 S. Ct. 90, 68 L. Ed. 235, 31 A. L. R. 102; Liverpool & L. & G. Ins. Co. v. Kearney, 180 U. S. 132, 136, 21 S. Ct. 326, 45 L. Ed. 460; American Surety Co. v. Pauly, 170 U. S. 133, 144, 18 S. Ct. 552, 42 L. Ed. 977; Northwestern N. L. I. Co. v. Banning, 63 F.(2d) 736, 737 (C. C. A. 8); Queen Ins. Co. v. Meyer Milling Co., 43 F.(2d) 885, 887 (C. C. A. 8). Usually, where the reason for a rule is absent, the rule has no right to be present. Here this bond was not drawn by the companies but by the Insurance Commissioner, who certainly was not representing the companies in so doing.

But putting aside the doubt as to any applicability of the rule, we must first ascertain if an ambiguity exists which would justify use of the rule. The first move in construing a contract is to seek the intended meaning from the words used in the contract. So doing, we find (as bearing on the matter before us) the following: The bond is entitled "Guaranty and Surety Company's Bond"; the conditions of the bond are set forth as:

"Whereas: The said principal has filed its charter and statement and in other respects conformed to the requirements of the Statutes for the transaction of a Guaranty and Surety Insurance business in Arkansas; and,

"Whereas, The said Company proposes to enter this State (or continue in this State) for the purpose of transacting a Guaranty and Surety Insurance business.

"Now, Therefore: if the said principal shall promptly pay, when due, all claims and obligations arising or accruing in this State by virtue of any bond or contract made by said principal; and all amounts due the State of Arkansas, by virtue of statute, and in all respects comply with the laws of this State; then this obligation shall become void, otherwise to remain in full force and effect."

From the above recitals in the bond it clearly appears that the Southern Company has filed its charter and statement required by the Arkansas statutes to enable it to transact a "Guaranty and Surety Insurance business in Arkansas" and that it proposes to enter the state for the purpose of transacting a "Guaranty and Surety Insurance business"; that this bond is to secure performance by it of its obligations incurred in the prosecution of its business in the state, which business is, in so far as the bond or its purposes are concerned, a "Guaranty and Surety Insurance" business. Obviously, the bond is limited to the character of business clearly set forth therein when the only purposes of the bond are considered.

Appellants seek to segregate and rely on that portion of the bond reading: "if the said principal shall promptly pay, when due, all claims and obligations arising or accruing in this State by virtue of any bond or contract made by said principal."

Such extract, taken alone, would justify their contention. However, the contract is an entirety and must be construed as such. Miller v. Robertson, 266 U. S. 243, 251, 45 S. Ct. 73, 69 L. Ed. 265; Atlas Assurance Co. v. Lawrence, 34 F. (2d) 401, 405, 406 (C. C. A. 8). So construed the broad expression "*all* claims and obligations arising or accruing in this State by virtue of *any* bond or contract made by said principal" (italics inserted) must be understood as intended to apply only to "any bond or contract" made in pursuance of its authority to transact a guaranty and surety business. The bond, on its face, so limits the transaction.

However, if the broad language just above quoted could be conceived as cre-

ating an ambiguity when considered with the other expressions in the bond, then we may consider the setting in which and as to which the entire language was used for such light as it may throw upon the meaning intended. This bond was given to comply with statutory requirements controlling the right of insurance companies to do business within the state. In respect to required qualification to enter the state, the here controlling Act of 1921, p. 473, § 1, classifies the various kinds of insurance and therein puts casualty insurance in a class distinct from guaranty or surety insurance—even where both classes of business are transacted by the same company. Section 6 is as follows: "Any bond or surety company writing casualty lines of insurance in addition to its fidelity and surety lines, shall in addition to making the deposit required by law or filing the bond required by section 6134 of Crawford & Moses' Digest in the sum of fifty thousand dollars, file a bond in the sum of twenty thousand dollars, covering its casualty business with the Insurance Commissioner and subject to his approval as provided in section 5980 of Crawford & Moses' Digest, or in lieu of such twenty thousand dollar bond, shall file the certificate of deposit provided for in section 2 of act 220 of the Acts of the General Assembly of 1913. And any casualty company writing fidelity or surety business in this State, in addition to filing the $20,000.00 bond required for health and accident companies, or a certificate of deposit of securities in lieu of same as provided by law, shall file with the Insurance Commissioner the bond for $50,-000.00 required by section 6134 of Crawford & Moses' Digest, or deposit securities with the Insurance Commissioner or Treasurer of this State, to be approved by them, in the sum of $50,000.00 in lieu of such bond, said $20,000.00 bonds or certificates of deposit to be filed annually on March first." Section 8 amends and re-enacts section 6134 of Crawford & Moses' Digest (referred to above in Section 6) and includes the provision following: "Any guaranty or surety company desiring to transact business in this State as herein provided, shall execute a bond signed by any other guaranty or surety company authorized to transact business in this State, or by citizens of this State, for the benefit of its obligees, in the sum of $50,000.00 to be approved by the Insurance Commissioner and filed in his office; provided, the guarantee or surety company making the deposit of securities herein named with the Insurance Commissioner of this State, shall not be required to give the bond herein provided for." From these statutory requirements it is clear that casualty insurance and guaranty and surety insurance are, as to qualification to do business in the state, dealt with as two separate classes—the provisions as to such security being that (in lieu of deposits) a continuing bond for $50,000 is required to transact a guaranty and surety business and a separate annual bond for $20,000 to transact a casualty business. The Southern acted under these provisions.[1] From the evidence quoted in the footnote, it is clear: That

---

[1] The Insurance Commissioner of the state testified concerning this matter as follows:

"Am Insurance Commissioner of the State of Arkansas and have been since March 6, 1933. I have with me the records of my office with reference to bonds and certificates filed in order to do business in Arkansas. In substance the statutes of Arkansas provide that in order to do a guaranty and surety business a foreign company operating in this state must file a bond in the sum of fifty thousand dollars or deposit securities of the approved value of fifty thousand dollars with the State Treasurer. In order to do a miscellaneous casualty business they must in addition to the fifty thousand dollars bond file a bond of twenty thousand dollars with the Insurance Department or a certificate from the Insurance Commissioner of the State of the company's domicile showing that they have at least a hundred thousand dollars in securities deposited with the Department of that State for the payment of claims of that character.

"The Southern Surety Company of New York filed a bond for fifty thousand dollars with The Home Indemnity Company of New York as surety on December 30, 1930, dated December 17, 1930. I understand that bond was filed to enable it to engage in the guaranty and surety business; it recites in it that whereas it is conforming to the statute for the transaction of a guaranty insurance business. * * *

"Q. Now in addition to that Mr. Gentry what did the Southern Surety Company file to enable it to engage in the casualty business? * * *

"From the time the Southern Surety Company of New York was given permission to do business and filed a bond, which is a continuing bond under our stat-

this bond was prepared by the Insurance Commissioner; that it was intended to cover only guaranty and surety business; that the Southern Company otherwise protected (under the statutes) its casualty business; and that such method followed the statutes. This setting in which this bond was made leaves no doubt as to the intention of the parties. They intended—and so stated in the bond—that the bond should cover only guaranty and surety business.

Appellants seek to avoid the meaning of the statutes by an able discussion of the history of the legislation leading up to the Act of 1921. We have given this matter careful consideration but are unable to agree with the conclusions reached by counsel. The act is clear as to the matter before us.

█ Appellants place much reliance upon National Surety Co. v. State ex rel. Chamberlin, 187 Ark. 84, 59 S.W.(2d) 27. That was an action upon a bond (identical in form with this bond) for legal services furnished within the state to the principal on the bond. The court stated that the

---

ute, each year thereafter it filed a certificate of the Insurance Department of New York showing that there was on deposit with that department over one hundred thousand dollars in securities pledged to pay all claims. These certificates were filed on March 1, 1928, March 1, 1929, February 1, 1930, and February 28, 1931."

The Deputy Insurance Commissioner, at the time this bond was given, testified:

"During the time I was deputy and Commissioner it was the custom of the Department to issue a certificate or permit to do a guaranty and surety and miscellaneous casualty business only upon complying with these statutes for separate bonds. We had certificates to do both classes of business, and there had to be bonds or deposits of securities or certificates of deposits in conformity with the statutory requirement for both classes of business.

"These forms of bonds were prepared by the Department, and I re-prepared the bond forms from about 1927 or 1928.

"Q. On guaranty and surety bonds, has it been the construction of the Department that that covers guaranty and surety business only?

"Mr. Wiley: I believe I will object to that, what the construction is.

"The Court: He may answer.

"A. That is true, if the company met the requirements to do a guaranty and surety business, which was the making of this fifty thousand dollar bond or deposit of fifty thousand dollars of securities for this state, we used what is known as the perpetual guaranty and surety bond. The Department furnishes the bond form. It also furnishes the bond form that they could use to make the bond to cover the miscellaneous casualty business, but that did not cover guaranty and surety.

"The bond form about which Mr. Gentry testified was prepared and used by the Department is the form prepared and used in this particular instance.

"Q. Was it your intention or the intention of the Department at that time to cover miscellaneous casualty claims under that bond?

"Mr. Wiley: I object to that, that bond speaks for itself.

"The Court: You may answer.

"A. It was the purpose and intention of the bond to prepare a bond in conformity with the statute and to require its execution, filing and approval for the protection of the policyholders of a guaranty and surety business, not what is commonly referred to as miscellaneous casualty business, because we had a separate bond form which we undertook to prepare in conformity with the statute for the use where the company desired to do a miscellaneous casualty business.

"Cross-Examination:

"By Mr. Wiley:

"Q. Mr. Dulaney, the Commissioner of Insurance of Arkansas would not have included anything in this bond from that the Commissioner of Insurance of the State of Arkansas didn't think was required by the statute, would he? A. As is said we undertook to meet the requirements of the statute.

"Q. I note on this bond it says: 'Now, therefore, if the said principal shall promptly pay, when due, all claims and obligations .arising or accruing in this State by virtue of any bond or contract made by said principal,' is 'contract made by said principal,' is the language which the Insurance Commissioner and the Insurance Department of. the State of Arkansas, considered required and contemplated by the statute of Arkansas, else they would not have put it in this bond? A. Yes, sir, that is correct, for the transaction of guaranty and surety business.

"Mr. Buzbee (Examining): The preamble recites that is the purpose of the bond. As I said by Mr. Gentry, it must make an application on departmental forms and set out just what business it proposes to do."

"sole question involved" was whether the qualifying bond covered "obligations other than the fidelity and guaranty contracts issued by" the principal. At first sight it might seem the question there was, broadly, the same as here, but consideration convinces otherwise. There the sole question was whether the qualifying bond covered any obligations "other than the fidelity and guaranty contract." Here the question is whether the bond can be extended to cover an entirely different statutory class of insurance for which other class a separate and distinct qualifying bond is required by the state statutes. The court allowed the recovery solely because it regarded the language of the bond to be "broader than the statute." The court did not determine the scope of the statute but said: "It is unnecessary to decide the extent of the liability under the language of the statute when the language of the bond itself unambiguously binds appellant as surety to promptly pay all claims and obligations arising or accruing in this state by virtue of any contract made by the principal." Had the court construed the statute, we would be bound thereby. Had the court had before it the precise question here, we would follow its decision for the sake of harmony unless, as here, we were convinced to the contrary. However, it is our duty to differ with the state court when clearly convinced its determination on a matter of general commercial law (which includes insurance contracts) is mistaken. Black & White Taxicab & Transfer Co. v. B. & Y. Taxicab & Transfer Co., 276 U. S. 518, 529–531, 48 S. Ct. 404, 72 L. Ed. 681, 57 A. L. R. 426; Ætna Life Ins. Co. v. Moore, 231 U. S. 543, 559, 34 S. Ct. 186, 58 L. Ed. 356; Carpenter v. Providence Washington Ins. Co., 16 Pet. 495, 511, 10 L. Ed. 1044; Pilot Life Ins. Co. v. Owen, 31 F.(2d) 862, 864 (C. C. A. 4); Long v. Monarch Accid. Ins. Co., 30 F.(2d) 929, 930 (C. C. A. 4); Ætna Life Ins. Co. v. Johnson, 13 F.(2d) 824, 825 (C. C. A. 8); Hartford Fire Ins. Co. v. Nance, 12 F.(2d) 575, 576 (C. C. A. 6); Security Nat. Bank of Sioux City, Iowa v. Old Nat. Bank of Battle Creek, Mich., 241 F. 1, 7, 8 (C. C. A. 8). This matter is purely the construction of a contract. Federal courts construe contracts of this character uncontrolled by state decisions. According all due respect to the view of the Supreme Court of Arkansas, we are so clearly convinced that this bond should be construed as above determined that we must follow our own conception of its meaning.

Concluding that the bond is free from the ambiguity here urged, there is no place for application of the rule of liberal construction favorable to the beneficiary of insurance contracts. Also, our conclusion as to the meaning and scope of the bond makes it unnecessary to discuss the point that it would not affect the validity of the bond if it were broader than the statutory requirements. The bond is not broader. The statutes required a bond of $50,000 to cover guaranty and surety business and this bond did no more than that.

Alternately, appellee pleaded, also, that if this bond should be construed as covering casualty contracts, it should be reformed to accord with the intention of the parties. Determining that the bond did not cover casualty contracts, the trial court had no occasion to rule upon this pleading. Reaching the same conclusion, we deem it unnecessary to discuss that matter.

The decree is affirmed.

WOODROUGH, Circuit Judge, dissents.