440 F.2d 544
 STANDARD LUMBER COMPANY and Components, Inc., Plaintiffs-Appellants,
v.
TRAVELERS INDEMNITY CO., Commercial Union Insurance Co. of
New York, and Buckeye Union Fire Insurance Co.,
Defendants-Appellees.
 No. 18493.
 United States Court of Appeals, Seventh Circuit.
 March 24, 1971.
 
 Timothy P. Galvin, Jr., Galvin, Galvin & Leeney, Hammond, Ind., for plaintiffs-appellants.
 John P. Gorman, James T. Ferrini, Chicago, Ill., Norman A. Miller, Clausen, Hirsh, Miller & Gorman, Chicago, Ill., of counsel, for defendants-appellees.
 Before HASTINGS, Senior Circuit Judge, and CUMMINGS and KERNER, Circuit Judges.
 KERNER, Circuit Judge.
 
 
 1
 Plaintiffs' claim against each of the defendant insurance companies is based on the identical fire insurance policy and varies only as to the amount of recovery sought. The case was heard pursuant to a stipulation of facts among the parties. Appeal is founded on the denial of the district court to set aside its order of summary judgment against plaintiffs, Standard Lumber Company and Components, Inc.
 
 I.
 
 2
 Plaintiffs had purchased fire insurance on certain equipment and inventory from defendants and others. The premiums for the policies in question were ultimately calculated on the basis of monthly reports filed by the insured which set forth the value of the insured property.[1] The total coverage provided by all carriers was limited to $650,000, of which defendant Commercial Union Insurance Company of New York covered 8.21%; defendant Buckeye Union Fire Insurance Company 4.10%; and defendant Travelers Indemnity Company 4.10%.
 
 
 3
 The plaintiffs faithfully filed monthly reports with the defendants, and on March 30, 1967, the plaintiffs filed the report which was then due in the amount of $528,410.41. However, the amount which should have been reported on March 30 is agreed by the parties to be $634,507.34; the disparity is stipulated to be largely the result of an unintentional bookkeeping error not made with any intent to defraud. The defendants alos stipulated that plaintiffs were following an acceptable and generally accurate procedure in filing the reports of statement of values. On April 12, 1967, plaintiffs suffered a fire loss which, for purposes of insurance coverage, was agreed to amount to $569,191.69.
 
 II.
 
 4
 Defendants maintain that their liability under the policy is limited to the amount reported on March 30, 1967, or $528,410.41. Plaintiffs request that we either interpret the insurance contract or reform their March 30 statement of value so as to place the value of plaintiffs' insured equipment and inventory at $621,860.01.[2] Plaintiffs assert that any other resolution of the case would result in a harsh and inequitable penalty to the plaintiffs. It is admitted that such a disposition would do literal violence to the 'honesty' clause which provides in pertinent part:
 
 
 5
 Liability under this policy shall not in any case exceed that proportion of loss * * * which the last reported value filed prior to loss * * * bears to the total case value * * * on the date for which report is made. * * *[3]
 
 
 6
 The report form of insurance policy, which is at issue in this case, was designed to permit insureds who possess fluctuating inventories to pay premiums based upon their actual monthly inventory rather than a fixed amount. The 'honesty' clause limits the insurer's liability to reported value, thus encouraging insureds to make accurate reports. By this method, insurance companies would not be required to pay losses which were not commensurate with the premiums paid. Plaintiffs argue that the sole motivation behind the 'honesty' clause was to prevent fraud. There is no support in the record for this assertion. Notwithstanding the absence of factual support as to intent, plaintiffs argue that the only fair interpretation of the contract is that the 'honesty' clause was intended to prevent only fraudulent understatements of value. We do not perceive such an interpretation to be correct. This is a contract between large and well-advised parties. There is no allegation that plaintiffs did not understand that the normal operation of the 'honesty' clause would cut off all understated claims. Hence it would appear that giving the 'honesty' clause anything but a literal interpretation would be inconsistent with the parties' reasonable expectations at execution. If the plaintiffs desired to limit the operation of the 'honesty' clause, they should have so negotiated.
 
 
 7
 Plaintiffs rely heavily on Liverpool & London & Globe Insurance Company v. Kearney, 180 U.S. 132, 21 S.Ct. 326, 45 L.Ed. 460 (1901). Each of the policies in that case contained a clause which is referred to as the 'iron safe clause.' The Supreme Court quoted the facts of this case as stated by the lower court, 180 U.S. 134-135, 215 S.Ct. 326, 327:
 
 
 8
 On the night of April 18, 1895, between the hours of 1 and 3 A.M., a fire accidentally broke out in a livery stable in the town of Ardmore, which was about 300 yards distant from the plaintiffs' place of business. Efforts to arrest the progress of the conflagration failed, and when it had approached so near to the plaintiffs' place of business that the windows of their store were cracking from the heat and the building was about to take fire, one of the plaintiffs entered the building for the purpose of removing the books of the firm to a safer place, thinking that it would be better to remove them than to take the chances of their being destroyed by fire. He opened an iron safe in the store, in which they had been deposited for the night, which was called a fireproof safe, and took them therefrom, and to his residence, some distance away. The books consisted of a ledger, a cash book, a day book or blotter, and a small paper-covered book containing an inventory that the firm had taken of their stock on or about January 1st 1895. In the hurry and confusion incident to the removal of the books, the inventory was either left in the safe and was destroyed, or was otherwise lost, and could not be produced after the fire. The other books, however, were saved, and were exhibited to the insurer after the fire, and were subsequently produced as exhibits on the trial. There was neither plea nor proof that the loss of the inventory was due to fraud or bad faith on the part of plaintiffs, or either of them.
 
 
 9
 The Supreme Court faced with this factual situation held:
 
 
 10
 A literal interpretation of the contracts of insurance might sustain a contrary view, but the law does not require such an interpretation. In so holding the court does not make for the parties a contract which they did not make for themselves. It only interprets the contract so as to do no violence to the words used and yet to meet the ends of justice. (180 U.S. at 138, 21 S.Ct. at 329.)
 
 
 11
 We note that Kearney involved a complete forfeiture and that the insured had literally complied with the insurance contract by keeping his records in a fireproof safe.[4] Hence the construction given to the contract by the Supreme Court, after the insured had gone beyond the obligations of the contract in attemptiong to preserve his records, is founded on language in the agreement.
 
 
 12
 In the case before us, the plaintiffs did not comply with the terms of the contract and, contra Kearney, this noncompliance affected not only the consideration paid by the insured to the insured, but also the amount of risk undertaken by the insurer.[5] In this factual setting, we do not believe the law permits us to give the 'honesty' clause plaintiffs' construction, regardless of the innocence of plaintiffs' error. Albert v. Home Fire & Marine Ins. Co. of Calif., 275 Wis. 280, 81 N.W.2d 549 (1957); Peters v. Great American Ins. Co., 177 F.2d 773 (4th Cir. 1949); Anderson Feed & Produce Co. v. Moore, 66 Wash.2d 237, 401 P.2d 964 (1965).
 
 III.
 
 13
 Plaintiffs request in the alternative that we reform their March 30 statement so as to permit inclusion of the erroneously omitted goods and inventory. Case law is unanimous in holding that an insured may not alter its erroneously prepared report of value. Rolane Sportswear, Inc. v. U.S.F. & G., 407 F.2d 1091 (6th Cir. 1969); Peters v. Great American Ins. Co., supra; Camilla Feed Mills, Inc. v. St. Paul Fire & Marine Ins. Co., 177 F.2d 746 (5th Cir. 1949). The reasoning of those cases is persuasive. The mistake is not mutual; it is strictly unilateral, and no fraud or inequitable conduct may be imputed to the insurer. In actuality, the plaintiffs seek to reform the 'honesty' clause in the insurance contract, but there is no contention that the clause does not reflect the parties' mutual intentions as of the date of execution. Hence neither reformation nor any other form of equitable relief is appropriate.
 
 
 14
 Affirmed.
 
 
 
 [1]
 The 'value reporting clause' provides in part:
 It is a condition of this policy that the Insured shall report in writing to this Company, not later than thirty (30) days after the last day of each calendar month, the exact location of all property covered hereunder, the total actual cash value of such property at each location and all specific insurance in force at each of such locations on the last day of each calendar month. * * *
 
 
 [2]
 The $621,860.01 figure does not represent actual value at the date of the fire but rather an adjustment for plaintiffs' bookkeeping error of $93,449.60
 
 
 [3]
 The question in this case may be illustrated in mathematical terms:
 The amount reported on March 30, 1967 x Loss=Amount due
 _____________________________________
 The amount that should have been Insureds
 reported on March 30, 1967
Supplying known data, the formula reads as follows:
 ? x $569,191.69 = Amount due
 Insureds
 _____________
 $634,507.34
 
 
 [4]
 This, in effect, was the Court's holding
 
 
 [5]
 In Kearney the Court noted that the books which were preserved and produced 'were substantially in compliance with the terms of the policy upon that subject.' Thus the insurance company could not prove it was prejudiced by virtue of the insured's non-compliance with the literal terms of the policy. Liverpool & London & Globe Insurance Company v. Kearney, 180 U.S. 132 at 135, 21 S.Ct. 326 at 327