[No. 18086.  En Banc.  February 21, 1924.]

J. W. PLOE, *Respondent*, v. INTERNATIONAL INDEMNITY COMPANY, *Appellant*.[1]

INSURANCE—CONSTRUCTION OF POLICY—AUTOMOBILE INSURANCE—COLLISION—LOSSES COVERED.  The loss of an automobile was not through a "collision," within a policy of insurance covering "accidental collision . . . with another automobile, vehicle or object," where, in rounding a turn, it skidded off a mountain road, went beyond control for twenty-five feet and struck a stump nine feet from the edge of the road and rolled down the mountain side and was destroyed (HOLCOMB, PARKER, and PEMBERTON, JJ., dissenting).

Appeal from a judgment of the superior court for King county, Truax, J., entered March 17, 1923, upon findings in favor of the plaintiff, in an action on an automobile insurance policy, tried to the court. Reversed.

[1]Reported in 223 Pac. 327.

*Poe, Falknor & Falknor,* for appellant.

*Thomas D. Long* and *Clem J. Whittemore,* for respondent.

TOLMAN, J.—This is an action, commenced and prosecuted by respondent as plaintiff, to recover upon a collision clause in a policy of automobile insurance. From a judgment as prayed for, the defendant has appealed.

The facts involved are very little in dispute, and such dispute as exists seems not to be material to a correct solution of the legal questions upon which the case must be determined.

The provisions of the insurance policy (attached thereto by rider) under which recovery is sought, are:

"In consideration of an additional premium of $75.60 this policy also covers, subject to its other conditions, damage to the automobile and/or equipment herein described (each accident being deemed a separate claim) by being in accidental collision during the period insured with any other automobile, vehicle or object, excluding (1) loss or damage to any tire due to puncture, cut, gash, blowout, or other ordinary tire trouble; and excluding in any event loss or damage to any tire unless caused in an accidental collision which also causes other loss or damage to the insured automobile, (2) loss or damage while the automobile insured is being operated in any race or speed contest or while being operated by any person under the age of sixteen years or under the age limit fixed by law."

In his complaint respondent alleges:

"On, to-wit, June 13th, 1922, at about the hour of 6:00 o'clock P. M. the plaintiff was driving his said automobile on the Sunset Highway in King County, Washington, at a point about five miles east of the town of North Bend, when the automobile skidded from the road and struck a stump standing about five feet from the side of the road and was thereby and

16—128 WASH.

thereupon precipitated down an embankment and was so damaged and so completely wrecked by reason of said collision as to be of no value.''

We shall assume that this language is broad enough to charge collision with the stump and also collision with the earth in the after movements of the car.

The defense was two-fold; first, that the damage was not caused by a collision with the stump; and second, that the skidding from the roadway, the rolling down the embankment, and the upsetting and tipping over of the automobile were none of them a collision within the meaning of the policy; therefore there can be no recovery.

It seems to be established that the road, at the place of the accident, is cut in the side of a mountain which is steep, precipitous, rocky and gravelly, descending at a slope as great as seventy-one degrees in part, and from that to forty-six degrees. The stump in question is shown to be approximately nine feet from the edge of the road, its base eight feet below the roadway, and its top about level therewith. Respondent had just about completed the rounding of a curve in the road when his car skidded, or he lost control, and it left the roadway twenty-five feet before reaching the stump, and in its helpless and unguided descent of the sheer mountain side it probably came into collision with the stump and thereafter capsized and rolled to its destruction.

The case of *Stuht v. United States Fidelity & Guaranty Co.*, 89 Wash. 93, 154 Pac. 137, is not strictly in point, because there the policy expressly excluded damage caused by the upset of the automobile ''unless such upset is the direct result of such collision—;'' but the case is enlightening upon the subject of collisions. The questions presented here are, therefore, new to us,

and we must look to outside authority for help in deciding them.

Respondent relies upon *Harris v. American Casualty Co. of Reading,* 83 N. J. L. 641, 85 Atl. 194, Ann. Cas. 1914B 846, 44 L. R. A. (N. S.) 70, and *Universal Service Co. v. American Insurance Co.,* 213 Mich. 523, 181 N. W. 1007, 14 A. L. R. 183, both of which support his contentions, but we are convinced that the better reasoned cases constituting the weight of authority are to the contrary.

It seems to us that the proximate cause of the accident here involved was the skidding of the car, or its passing from the roadway from whatever cause, and the instant it left the roadway and started uncontrolled down the mountain side, its doom was sealed and its destruction certain. Its subsequent contact with the stump was an incident which had, and could have, no effect upon the situation beyond hastening or delaying for an instant the final result. Therefore the words of the policy, "this policy . . . covers . . . damage to the automobile . . . by being in accidental collision . . . with another automobile, vehicle or object—," which clearly mean that the damages recoverable must be the result of such a collision, cannot, by reasonable construction, be made to include such a striking of the stump as is here shown.

But, it is argued, that the damages were inflicted by a collision or collisions between the automobile and the earth, which it struck perhaps repeatedly in its descent of the hillside, and there being no provision in the policy excluding damages caused by upset, as in the *Stuht* case, *supra,* we should hold these various contacts with the earth to be collisions within the meaning of the policy. In *Hardenbergh v. Employers' Liability Assurance Corporation,* 80 Misc. Rep. 522, 141 N. Y.

Supp. 502, the automobile turned to the side of the road to pass an approaching vehicle, the hind wheels skidded, throwing the machine into a ditch at the side of the road. In attempting to regain the road, the right front wheel collapsed and the automobile turned over twice, striking the earth and causing the damages complained of. It was there held that these facts did not constitute a collision within the meaning of a similar policy.

In *Dougherty v. Insurance Co. of North America,* 19 Pa. Dist. R. 547, it appears that the accident was caused by one of the wheels of the automobile being driven into a deep hole in a city street. This was held not to be a collision within the meaning of a similar policy.

In *Moblad v. Western Indemnity Co. of Dallas,* 53 Cal. App. 683, 200 Pac. 750, the automobile swerved to the outer edge of the roadway to avoid striking another vehicle, when the roadway gave way, causing the automobile to pass down an embankment, overturn and roll down a mountain side, but not striking any other object until after it overturned. The action was based upon the automobile's coming in contact with the ground at the time of the upset. The court said:

"In the instant case, the damage to plaintiff's car was caused proximately by its turning over on the edge of the road. Its subsequent revolutions and consequent damage were but the operation of physical laws set in motion when it turned over on the edge of the road. The proximate and only cause of the accident was not a collision, but the upsetting of the automobile."

In *Bell v. American Insurance Co.,* 173 Wis. 533, 181 N. W. 733, 14 A. L. R. 179, the terms of the policy seem to have been identical with the one we are now considering. There the plaintiff drove from the main

roadway, one side of the car settled into soft ground, and the car tipped over, and the car tipped over, and the supposed collision was that caused by the contact between the car and the ground.  The court said:

"With the definitions of lexicographers as a basis, it is easy to demonstrate that the incident resulting in damage to plaintiff's automobile constituted a collision.  Thus:

" 'A collision is the "meeting and mutual striking or dashing of two or more moving bodies or of a moving body with a stationary one."  Century Dictionary. "Object" is defined to be "that which is put, or which may be regarded as put, in the way of some of the senses, something visible or tangible."  Webster's Dictionary.  An automobile is an object.  Upon the overturning of an automobile its forcible contact with the earth constitutes a "mutual striking or dashing of a moving body with a stationary one."  Hence the forcible contact of the automobile with the earth on the occasion of the upset constituted a collision.'

"Upon its face this appears to be good logic, but the conclusion is neither convincing nor satisfying.  One instinctively withholds assent to the result.  The reason is that it makes a novel and unusual use and application of the word 'collision.'  We do not speak of falling bodies as colliding with the earth.  In common parlance the apple falls to the ground; it does not collide with the earth.  So with all falling bodies.  We speak of the descent as a fall, not a collision.  In popular understanding a collision does not result, we think, from the force of gravity alone.  Such an application of the term lacks the support of 'widespread and frequent usage.'

"While it is true that insurance contracts should be construed most strongly against the insurer (*French v. Fidelity & Casualty Co.*, 135 Wis. 259, 115 N. W. 869, 17 L. R. A. (N. S.) 1011; *Kelly v. Fidelity Mut. L. Ins. Co.*, 169 Wis. 274, 172 N. W. 152, 4 A. L. R. 845), yet they are subject to the same rules of construction applied to the language of any other contract.  It is a fundamental rule that the language of a contract

is to be accorded its popular and usual significance. It is not permissible to impute an unusual meaning to language used in a contract of insurance any more than to the language of any other contract. The incident causing the damage to the automobile here in question is spoken of in common parlance as an upset or tip-over. If it were the purpose to insure against damage resulting from such an incident, why should not such words, or words of similar import, have been used? We cannot presume that the parties to the contract intended that an upset should be construed as a collision in the absence of a closer association of the two incidents in popular understanding.''

In the recent case of *New Jersey Insurance Co. v. Young*, 290 Fed. 155, the circuit court of appeals for the ninth circuit, speaking through Judge Hunt, said:

''It is accepted that the noun 'object,' as used in the collision clause, should be construed as including something of a different character from anything included in the specific words 'automobile' and 'vehicle,' and that the doctrine of *ejusdem generis* cannot properly be applied. But we are unable to construe the word 'collision' as including damage caused by the striking of the car upon the roadway after the defective axle broke and let the car down. The automobile was being driven upon the highway. It did not come in contact with any object upon the road or roadway until after the defective axle broke, when the car dropped and the end of the broken axle plowed into the roadway itself, and the car pivoting on the broken axle, turned over and was damaged. In a usual sense, an accidental collision between an automobile and another object means striking against something on the road; for instance, hitting a pedestrian, or a horse, or a cow perchance straying in the road, or a rock or stump upon the roadway, or a guard rail, such as is often placed in the road at points where repairs are being made, or where the automobile hits or rubs the side of a tunnel or embankment or bridge alongside or defining the road. In other words, we think the language of the contract, when accorded the ordinary and usual mean-

ing that should govern, does not extend to the incident under consideration, where the proximate cause was the breaking of the defective axle, and damage was not by 'being in accidental collision' with an object.''

With this language we are in accord, and applying it to the facts in the instant case, it is apparent that there was no collision within the meaning of the policy, and the judgment appealed from must be reversed with directions to dismiss the action. It is so ordered.

MAIN, C. J., FULLERTON, BRIDGES, MACKINTOSH, and MITCHELL, JJ., concur.

HOLCOMB, J. (dissenting)—In my opinion, there was a collision as defined by lexicographers and by the court in *Bell v. American Insurance Co.,* 173 Wis. 533, 181 N. W. 733, 14 A. L. R. 179. When a moving automobile strikes a large, high, ''tangible,'' ''immovable'' object, such as a giant Washington stump, there is beyond doubt a collision, and such an occurrence was testified to by the witnesses, and that it was accidental. That should affirm the judgment.

I therefore dissent.

PARKER and PEMBERTON, JJ., concur with HOLCOMB, J.