[No. 20597.  Department Two.  August 3, 1927.]

E. S. SMALL, *Respondent*, v. STANDARD ACCIDENT INSURANCE COMPANY, *Appellant*.[1]

[1] INSURANCE (72) — AVOIDANCE OF POLICY — CONCEALMENT BY INSURED—KNOWLEDGE OF FACTS. Liability on an automobile accident policy cannot be denied on the ground of fraud in falsely stating that the insured had never had a policy cancelled, where the application was made out by the agent, without the insured's knowledge of the contents of the application, and the agent accepted the premium and delivered the policy after knowledge that his statements in the application as to a prior cancellation were contrary to the fact.

[2] INSURANCE (49-1)—PROPERTY COVERED — DESCRIPTION OF RISK — "COLLISION." The loss of an automobile was through a "collision," within a standard form of policy of insurance covering "accidental collision with another object, either moving or stationary," where it appears that, in rounding a turn, the car ripped off the mail boxes from four or five posts at the side of the road and. thirty feet further on struck a telephone pole eight feet off the pavement.

Appeal from a judgment of the superior court for Yakima county, Hawkins, J., entered November 4, 1926, upon the verdict of a jury rendered in favor of the plaintiff, in an action upon an automobile insurance policy. Affirmed.

[1]Reported in 258 Pac. 33.

*Grady & Velikanje,* for appellant.
*Richards, Gilbert & Conklin,* for respondent.

TOLMAN, J.—In November, 1925, respondent was the owner of a certain automobile, and though a resident of Yakima, Washington, was then temporarily in Seattle with his car. While there, he received notice of the cancellation of the insurance on his car, with a check for the unearned premium. He then sent his car back to Yakima, advising his stepfather and his half-brother of the fact, asking them to procure full coverage insurance on the car and directing that it not be used until so covered. The half-bother applied to an insurance agency in Yakima for the insurance requested, but was informed that, if he was to drive the car, that agency could not insure it, because he, the half-brother, had driven another car which had been in an accident, out of which claims in which their insurance company was interested were still pending. But, on request, this agency undertook to place the insurance. The broker thereupon called another insurance broker who represented the appellant, and informed him that he had some business for him.

The second broker called at the office of the first broker, in his absence, but found a young lady stenographer who had been supplied with what was thought to be the necessary data, all of which was freely and fully imparted to appellant's agent. During the conversation, the agent asked why the first broker had not himself written the insurance, and was truthfully informed as to the reason. He then asked if respondent Small had ever had insurance on his car canceled, and the stenographer replied "Not to my knowledge." Appellant's agent then said that Small might be informed that his car would be covered from noon on November 20, 1925; returned to his own office, filled out an appli-

cation from the data given him, and to the question printed therein asking if other insurance had been canceled, he wrote the answer "No," himself signed Small's name to the application, and, without ever having met or conversed with Small or the half-brother, forwarded the application to the general agency in Seattle, where the policy now in suit was written and dated the following day, November 21. This policy was, on the same day it was written, mailed to the agent in Yakima, where it was received, probably on Monday afternoon, November 23.

In the meantime, at about midnight of Sunday, the 22nd, or in the early hours of Monday, the 23rd, the car was wrecked, as will more fully appear later.

On Monday morning, appellant's agent was informed of the wrecking of the car, and also of the fact that other insurance had been theretofore canceled. Notwithstanding this knowledge, he thereafter countersigned this policy, delivered it to the stepfather of the respondent, and received and receipted for the full premium. It is but fair, however, to say that the agent testified that he thought he countersigned the policy before he heard of the cancellation of other insurance; but, if that be true, it is immaterial. The receipt of the premium and the delivery of the policy were certainly after he had full knowledge. The later denial of liability and tender back of the amount of the premium paid can hardly alter this situation.

Respondent brought this action to recover on the policy, and from a verdict and judgment against it the defendant has appealed.

[1] The point most largely stressed by the appellant in argument here is that a fraud was perpetrated upon the appellant by the respondent in failing to disclose that prior insurance had been canceled. We think the facts, as hereinbefore detailed, are such as to for-

bid our so holding as a matter of law. The jury could scarcely fail to find as we have indicated; and it appearing affirmatively that the respondent and his agents were wholly without knowledge of what the application contained on the subject, were entirely without responsibility for the so-called misrepresentation, and that the fault, if any, lay with appellant's agent, a further discussion seems unnecessary. If anything needs to be added, the fact that appellant might well be held to be estopped by the delivery of the policy and the receipt of the premium after full knowledge should suffice.

[2]  The policy is the standard form, and provides:

"Collision C.  Against actual loss or damage to any of the automobiles described herein, including its operating equipment while attached thereto if sustained within the Policy Period, and if caused solely by accidental collision with another object, either moving or stationary, excluding:  (1)—all loss or damage by fire from any cause whatsoever;  (2)—all loss or damage to any tire due to puncture, cut, gash, blow-out or other ordinary tire trouble; and excluding in any event loss or damage to any tire, unless caused in an accidental collision which also causes other loss or damage to the insured automobile."

Appellant argues that the facts bring this case within the rule announced in *Ploe v. International Indemnity Co.,* 128 Wash. 480, 223 Pac. 327, 35 A. L. R. 999, which was followed and approved in *Olympic Securities Co. v. Pennsylvania Fire Insurance Co.,* 135 Wash. 307, 237 Pac. 707.  Upon this phase of the case, the facts disclosed by the record are very meagre, and the case is notable in what is left to inference.  So far as the abstract discloses, it was not shown upon the trial who was driving the car at the time of the accident, whose was the body found in or near the wreck, at what speed the car was traveling at or before the

time it left the pavement, the nature or degree of the curve in the roadway, the place where the car left the paved portion of the highway, or why it so left. About all that is disclosed is, that there was a curve in the highway, its degree not being shown; that, on the right-hand side of the pavement, were situated some four or five posts, six to eight inches in diameter, firmly planted in the ground eighteen inches from the edge of the pavement, with a stringer or board connecting the posts near the top, on which were placed a number of mail boxes; that, shortly after midnight, on the morning in question, these mail box posts were found torn out and scattered along upon and beside the pavement; that automobile tracks led, from where the posts had been originally planted, some thirty feet or more to a telephone pole which was only about eight feet to the right of the pavement; that this post was scarred and abraded to a height of about eight feet and left in an inclining position, being held from falling only by the wires attached to it; and at or near the foot of the pole was the wrecked car. It also appears that the paved highway was on a level with the foundation of the mail box posts, and only slightly higher than the level of the ground from that point to the telephone pole; and one witness testified that the car could easily be driven off the pavement at that point without danger of upsetting, unless driven at an excessive speed.

From these known facts, might not the jury infer that the driver, in the nighttime, got slightly off the pavement to his right; that there would have been no danger to the car, had it not collided with the mail box posts, and that it did so collide, causing the driver to lose control, run into the telephone pole and destroy the automobile? It must be remembered that there is nothing in the policy vitiating the insurance, if the driver be negligent, so that it is unnecessary to

inquire further as to why the car came in contact with the mail box posts. Can it be said here, as in the *Ploe* case, that the car was doomed before it collided with the posts? We think every reasonable inference is to the contrary and that the jury was justified in so finding.

While we adhere to the doctrine of the *Ploe* case, *supra,* we find it to be inapplicable here, and the judgment is affirmed.

MACKINTOSH, C. J., PARKER, and FRENCH, JJ., concur. HOLCOMB, J., concurs in the result.