## VAUGHAN v. KANSAS CITY MOVING PICTURE OPERATORS' UNION, LOCAL No. 170, et al.

District Court, W. D. Missouri, W. D. August 3, 1929.

No. 1357.

Hanna & Hurwitz, of Kansas City, Mo., for plaintiff.

Julius C. Shapiro, of Kansas City, Mo., for defendants.

REEVES, District Judge. This is a proceeding in equity; the object of which is to restrain the defendants and each of them from interfering in any manner with the business of the plaintiff as the owner and operator of several moving picture theaters in Kansas City, Mo. There is a diversity of citizenship. The amount in controversy is within the jurisdiction of this court.

It is alleged in the bill that the plaintiff and defendant local union No. 170 of the International Alliance, Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada, on the 1st day of September, 1928, entered into contracts or "working agreements" by the terms of which said union agreed to furnish "competent, experienced and reliable projectionists" to operate the moving picture machines of the plaintiff in his several theaters, subject to certain conditions and for compensation therein stipulated.

In accordance with these several agreements, and particularly referring to the working agreement in respect of one of plaintiff's theaters, known as the Neptune Theatre, the defendant union furnished one B. G. Hall as a projectionist. The said Hall was accepted and employed by the plaintiff and assumed the duties and obligations of his position. Said contracts or working agreements were for a period of one year from September 1, 1928, expiring on August 31, 1929.

On May 12, 1929, plaintiff installed an attachment to his projection machine, known as a "sound attachment." By this attachment plaintiff could furnish musical and vocal accompaniments to the moving pictures displayed on the screen. On account of this attachment, it became necessary for the projectionist to shift the records occasionally. This was very simple and very similar to the changing of the records on an ordinary Victrola. The said Hall continued his employment and to operate both the projection machine and the sound attachment until about May 26, 1929, when, according to the evidence, the defendant Walter S. Croft, as the business agent of the defendant union, appeared before the plaintiff and demanded the execution of a new contract or working agreement in lieu of that in force on the said Neptune Theatre.

Such proposed contract provided for a substantial increase in the compensation over that stipulated in the old agreement, and, moreover, it made provision for the employment of another employee upon a wage scale much higher than that provided for in the first working agreement for a single operator. Compliance with this demand would have very considerably increased the expense of operation.

Plaintiff refused to enter into the proposed new working agreement, but, according to the evidence, indicated a desire for a conference with the officials of the union so that a satisfactory arrangement might be made. Such a request was refused. The said business manager of the defendant organization then informed the plaintiff that he must sign the proposed contract "or else." No further conference or communication passed between the defendant operators' union or the plaintiff.

The said Hall quit his employment without notice, and the plaintiff was compelled to close the doors of his theater and return the admission fees of the patrons. Thereupon the plaintiff procured the services of a nonunion operator.

This was followed by a series of acts of vandalism, intimidation, sabotage, and willful destruction of plaintiff's property. Malodor-

ous and offensive bombs were exploded in the theater while patrons were assembled therein. Both plaintiff and his patrons were menaced and threatened from time to time by individuals who apparently represented the defendant operators' union or were sympathetic therewith. Destructive bombs were exploded in plaintiff's theater. The sidewalk and space in front of said Neptune Theatre was picketed. By such picketing there was an interference with patrons, and sinister threats, both to the public and to the plaintiff, were made. Such acts had the effect to discourage and intimidate the public. Paid admissions were greatly reduced. Such destruction of property and intimidation of the public is not denied.

It is the sole contention of the defendant that, while said acts ought not to be condoned, yet they say that upon the evidence in the case a dispute or controversy existed; that because of that fact certain rights and privileges inured to the defendants under the law; and that among these was the right of peaceful and lawful persuasion and peaceful and lawful picketing. In other words, the defendants say that, even if the injunction should issue, it ought not to interfere with their right of peaceful picketing in promotion of their side of the controversy. They also claim the right to use peaceful and fair arguments and persuasive methods in support of their claims.

■ 1. The court's attention is necessarily challenged to section 52, tit. 29, United States Code (29 USCA § 52), relating to the subject of labor and to the particular subject of "statutory restriction of injunctive relief." This is known as the Clayton Act, and prohibits the courts of the United States from granting restraining orders or injunctions "in any case between an employer and an employé * * * involving, or growing out of, a dispute *concerning terms or conditions* of employment."

It will be observed from the foregoing that the old injunctive remedy in an equitable proceeding cannot be used in a dispute between employer and employees "concerning terms or conditions of employment."

Upon the evidence in the case a serious question arises as to whether "a dispute concerning terms or conditions of employment" actually arose between the plaintiff and the operators' union in this case.

Plaintiff testified that, without warning, a new contract or working agreement, which involved burdensome provisions, was presented to him and a demand for his signature made. He said that he asked for a conference, but was told that he could either sign said new agreement "or else." Plaintiff refused to sign, and then there followed a series of wrongful and criminal acts. The testimony showed that some of such unlawful and criminal acts were committed by members of said operators' union.

The word "dispute," as defined by Standard Dictionaries, means: "A verbal controversy; a contest by opposing arguments or expressions of opposing views or claims, controversial discussion; altercation; debate; contest; a struggle; a quarrel." According to the evidence, there was neither verbal controversy nor contest by opposing arguments or the expression of opposing views or claims. There was no controversial discussion.

The business agent of the defendant operators' union made a peremptory and arbitrary demand upon plaintiff. This demand involved the execution of a new agreement both radical and expensive. Plaintiff was given no opportunity to express his views or to discuss the subject. He was peremptorily told, according to the evidence, either to sign "or else." The last-quoted expression was menacing and sinister, as subsequent events showed.

Under such circumstances, the court is of the opinion that no dispute as contemplated by said statute was involved between the plaintiff and the defendant union.

■ 2. However, assuming that there was such a controversy, said section contains the following provision, which is undoubtedly applicable in this case: "No restraining order or injunction shall be granted * * * unless necessary to prevent irreparable injury to property, or to a property right, of the party making the application, for which injury there is no adequate remedy at law."

Undeniably plaintiff has sustained serious injury and is menaced with a threat of irreparable injury. He has no adequate remedy at law. The right of the plaintiff to have injunctive relief is admitted. It is claimed, however, that the defendants are not responsible for the unlawful acts heretofore committed and for the menacing threats either made directly or communicated to plaintiff.

The court cannot agree with this contention. There was much testimony that fully justified the inference that all the wrongful acts and all the sinister threats were committed and made at the instance and direction of the defendants.

3. It is contended by the defendants that, notwithstanding the wrongful acts as above enumerated, and notwithstanding the right and duty of the court to enjoin the further commission of said unlawful acts, yet they say that, under said section 52, tit. 29, United

States Code (29 USCA § 52), there are certain things which they may lawfully do if a valid dispute exists. The following restrictions are placed upon an injunction of this character: Such restraining order or injunction shall not "prohibit any person or persons, whether singly or in concert * * * from recommending, advising, or persuading others by peaceful means," to terminate their employment or to cease the performance of any work or labor. Moreover said section expressly extends to such persons the right to attend "at any place where any such person or persons may lawfully be, for the purpose of peacefully obtaining or communicating information, or from peacefully persuading any person * * * to abstain from working; or from ceasing to patronize or to employ any party to such dispute, or from recommending, advising, or persuading others by peaceful and lawful means so to do; * * * or from peaceably assembling in a lawful manner, and for lawful purposes."

Neither the petition nor the evidence showed that the defendants have heretofore sought to exercise the rights vouchsafed under this provision.

Plaintiff has only asked that the court interfere with an unlawful and wrongful course of action. All the acts complained against by the plaintiff are wrongful and unlawful. Plaintiff has asked the court to enjoin a continuance of admittedly wrongful acts.

This court is not called upon to interfere in any way with any right vouchsafed to the defendants under said section 52.

4. Under the circumstances here presented, it would be difficult for the court to conceive of the defendants exercising rights provided for in said section 52. Such rights are extended in case of a valid dispute. The hostile attitude of the defendants has been so impressed upon the public and upon the mind of plaintiff that even an act which might ordinarily be classed as a peaceful and lawful act would be considered in the public mind as sinister in purpose and effect. Such acts are interwoven with a plan of intimidation and destruction. Even if the bill and the evidence justified an order pointing out what the defendants might ordinarily lawfully do, the court would be seriously embarrassed in this case in such an undertaking. United States v. Railway Employees' Department of American Federation of Labor (D. C.) 283 F. 479, loc. cit. 494. In the above case, Judge Wilkerson of the Northern District of Illinois had before him a very similar situation. He disposed of it in the following language:

"The record in this case shows that the so-called peaceable and lawful acts are so interwoven with the whole plan of intimidation and obstruction that to go through the formality of enjoining the commission of assaults and other acts of violence and leave the defendants free to pursue the open and ostensibly peaceful part of their program would be an idle ceremony."

The foregoing is directly applicable in this case. In view of the above, the injunction will be granted as prayed in plaintiff's petition.