## UNKELSBEE v. HOMESTEAD FIRE INS. CO. OF BALTIMORE.

### No. 230.

Municipal Court of Appeals for the District of Columbia.

Feb. 6, 1945.

Rehearing Denied Feb. 19, 1945.

James F. Bird, of Washington, D. C., for appellant.

Samuel W. McCart, of Washington, D. C., for appellee.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

RICHARDSON, Chief Judge.

In an action on an automobile insurance policy providing "comprehensive coverage," but excepting loss caused by collision, defendant's claim that the loss was caused by collision was sustained. Plaintiff has appealed.

The trial was upon an agreed statement of facts from which we quote:

"Plaintiff parked his 1936 2 door sedan automobile on the street opposite his residence, facing downhill, with the right front wheel turned at an angle against the curb, the handbrake on, the gears engaged, the ignition locked and the keys thereto kept in personal possession of the plaintiff, and the car doors unlocked. Without knowledge or consent of plaintiff, in his absence, a youth of the age of three and one-half years entered the said car so parked and caused it to start down the hill and steered and attempted to steer it so that it proceeded across an intersecting street and bus route and into the next block, a total distance of more than one city block, where it was stopped and damaged by colliding with another automobile which was parked at the curb."

Liability depends upon the interpretation of the following clause of the insurance policy:

"Coverage D—Comprehensive Loss of or Damage to the Automobile, except by Collision

"To pay for any loss of or damage to the automobile, hereinafter called loss, except loss caused by collision of the automobile with another object or by upset of the automobile or by collision of the automobile with a vehicle to which it is attached. Breakage of glass and loss caused by missiles, falling objects, fire, theft, explosion, earthquake, windstorm, hail, water, flood, vandalism, riot or civil commotion shall not be deemed loss caused by collision or upset."

Two questions are presented: Was the loss one which may properly be attributed to "theft" or "vandalism?" Or, if not, was the loss "caused by collision?"

### Theft Or Vandalism

Our approach to a construction of the policy is clearly defined. A contract of insurance is to be construed liberally in favor of the insured and strictly as against the insurer.[1] Policies are prepared by ex-

[1] Liverpool & London & Globe Ins. Co. v. Kearney, 180 U.S. 132, 21 S.Ct. 326, 45 L.Ed. 460; Aschenbrenner v. United States Fid. & Guar. Co., 292 U.S. 80, 54 S.Ct. 590, 78 L.Ed. 1137.

perts and legal advisers acting in the interest of the company and the insured has no voice in the selection or arrangement of the words employed.[2] Words used should be given their common, ordinary, and it has been said their "popular" meaning, "rather than that of the lexicographers or of those skilled in the niceties of language."[3] And "any exception in a policy of insurance altering the terms of general liability is to be taken and construed most strongly against the insurer."[4]

In Pennsylvania Indemnity Fire Corp. v. Aldridge, 73 App.D.C. 161, 117 F. 2d 774, 776, 133 A.L.R. 914, the court gave its strong approval to these rules. It placed this jurisdiction among those favoring their liberal application. Contrary, it said, to the numerical weight of authority, to recover indemnity for "theft" did not require that intent be shown to deprive an owner permanently of his property, but merely the intentional appropriation of property "to a use inconsistent with the property rights of the person from whom it is taken."

A child under seven years of age is held incapable of forming a criminal intent, and this conclusive presumption of the common law is carried into our jurisprudence. So between seven and fourteen the same presumption exists, subject to rebuttal by evidence of actual capacity.[5] But these arbitrary presumptions may be regarded more in the light of a shield against the penalty of the law, founded on the theory that adequate punishment will be administered by parental authority, than an obliteration of the offense.[6] And in cases of tort, liability attaches regardless of age where the nature of the act is such that children of like age would realize its injurious consequences.[7]

Here, in the brief statement of agreed facts, there is nothing from which we may infer a specific intent to deprive the owner of the automobile of his property rights. Judicial notice may hardly be extended to supply such an element in the mental processes of a child of such tender years, or authorize the presumption that would exist were a person more mature to enter a parked car and depart with it. But it may be assumed that the average child of that age is able to understand fundamental principles of right and wrong, to realize that he would have no right to enter a neighbor's automobile and tamper with its mechanism.

"Vandalism" is defined as "Wilful or ignorant destruction of artistic or literary treasures; hostility to or contempt for what is beautiful or venerable." "Vandalic" as "willfully or ignorantly destructive." Unquestionably, children as young or younger than the boy involved here are often "wilfully or ignorantly destructive." Certainly the term "vandal" is frequently applied to them. And it would seem applicable here where the child disengaged the gears, released the brake, "steered and attempted to steer" an automobile left with its front wheels "turned at an angle against the curb" so that it proceeded down hill for more than a city block before the collision.

It may be said that there was no evidence of intentional injury to the automobile. To one who is a scholar and familiar with the history of the barbaric tribe whose depredations perpetuated its name in our dictionaries, to one "skilled in the niceties of language," the point may have weight. But to the popular mind any unusual destruction wrought in the doing of a wrongful act, does, in our opinion, merit and receive the title "vandalism." True, mere accidental damages may not be so termed. But if one were to enter a museum, violate its rules by lifting and handling a valuable object, unintentionally let it fall and be broken, few would hesitate to describe the act as vandalism.

### Was the Loss "Caused by Collision"?

Does that expression as used in the policy in suit refer to the responsible—what in law is called the dominant or proximate—cause, or does it include also those incidental, occasional factors contributing to the particular injury?

Insurance, as a business, had its origin in the need for protection to owners

---

[2] See Liverpool & London & Globe Ins. Co. v. Kearney, supra.

[3] Imperial Fire Ins. Co. v. Coos County, 151 U.S. 452, 14 S.Ct. 379, 38 L.Ed. 231; Williamsburgh City Fire Ins. Co. v. Willard, 9 Cir., 164 F. 404, 21 L.R.A.,N.S., 103; Atlas Assur. Co. v. Lies, 70 Ga.App. 162, 27 S.E.2d 791.

[4] Atlas Assur. Co. v. Lies, supra; 13 Appleman Ins. Law & Practice, § 7465.

[5] Allen v. United States, 150 U.S. 551, 14 S.Ct. 196, 37 L.Ed. 1179.

[6] Allen v. United States, supra.

[7] 27 Am.Jur., "Infants," Sec. 90.

of ships and cargoes against risks of the sea.[8] In the course of the rapid growth to its present huge proportions the "cause" of loss, as the expression is used in assuming and in limiting liability, has been construed by the courts in an infinite number of cases. Throughout these cases, whether appearing in a clause creating or in one excepting from liability, unless qualifying words appear, such as "direct," "direct or indirect," "sole," etc., the usual rule attributing a result to the proximate and not to the remote cause has been applied.

As long ago as 1837, Mr. Justice Story, in Waters v. Merchants' Louisville Ins. Co., 11 Pet. 213, 223, 9 L.Ed. 691, said:

"This is not all: we must interpret this instrument according to the known principles of the common law. It is a well established principle of that law, that in all cases of loss we are to attribute it to the proximate cause, and not to any remote cause: causa proxima non remota spectatur, and this has become a maxim, not only to govern other cases; but, (as will be presently shown) to govern cases arising under policies of insurance. If this maxim is to be applied, it disposes of the whole argument in the present case, and why it should not be so applied we are unable to see any reason."

And after referring to like rulings in earlier cases in the Supreme Court and in the English courts, and demonstrating that he did not intend "proximate" as nearest in sequence, he said further:

"Some suggestion was made at the bar whether the explosion, as stated in the pleas, was a loss by fire, or by explosion merely. We are of opinion, that as the explosion was caused by fire, the latter was the proximate cause of the loss. * * *"

In Aetna Insurance Co. v. Boon, 95 U.S. 117, 130, 24 L.Ed. 395, a case many times cited and quoted,[9] where the action arose on an insurance policy, it was said:

"The proximate cause is the efficient cause, the one that necessarily sets the other causes in operation. The causes that are merely incidental or instruments of a superior or controlling agency are not the proximate causes and the responsible ones, though they may be nearer in time to the result.

\* \* \* \* \* \* \*

"The proximate cause, as we have seen, is the dominant cause, not the one which is incidental to that cause, its mere instrument, though the latter may be nearest in place and time to the loss. In Milwaukee & St. Paul R. Co. v. Kellogg, 94 U.S. 469 [24 L.Ed. 256], we said, in considering what is the proximate and what the remote cause of an injury, 'The inquiry must always be whether there was any intermediate cause disconnected from the primary fault, and self-operating, which produced the injury.' "

The rule was recognized in Mitchell v. Potomac Ins. Co., 183 U.S. 42, 22 S.Ct. 22, 46 L.Ed. 74, a case arising in this jurisdiction, where a fire insurance policy excepted "loss caused by lightning or explosions." The court said: "A loss occurring solely from an explosion not resulting from a preceding fire is covered by the exception in the policy."

That the cause of loss, unmodified, means the proximate cause, has been applied in recent cases involving automobile insurance. In Fogarty v. Fidelity & Casualty Co., 122 Conn. 245, 188 A. 481, 484, a burst of flame from the engine, which did no appreciable damage to the truck or its driver, caused the latter to lose control and jump from the vehicle which veered from the road, struck an embankment and was destroyed. It was held that "there was a direct chain of causation starting with the outburst of flame in the cab" and the insurer was not liable on a collision policy excepting loss caused by fire. Under similar circumstances, in Beatty v. Netherlands Ins. Co., 119 Pa.Super. 567, 181 A. 513, a case then recently decided, the subject was thoroughly considered and the same conclusion reached.

And in the recent case of Delametter v. Home Ins. Co., 233 Mo.App. 645, 126 S.W. 2d 262, quoting at large from the opinion of Justice Cardozo in Bird v. St. Paul Fire & Marine Ins. Co., 224 N.Y. 47, 120 N.E. 86, 13 A.L.R. 875, the doctrine of proximate cause applicable to the construction of insurance policies was stated and approved.

---

[8] "It is well known that the contract of insurance sprang from the law maritime, and derives all its material rules and incidents therefrom." New England Mut. Marine Ins. Co. v. Dunham, 11 Wall. 1, 31, 20 L.Ed. 90.

[9] See Goodlander Mill Co. v. Standard Oil Co., 7 Cir., 63 F. 400, 27 L.R.A. 583; Williamsburgh City Fire Ins. Co. v. Willard, supra.

So where such a policy excluded damage caused by upsets it was held to be immaterial that the car may turn over and be damaged "if the turnover is the result of a collision."[10] In Ploe v. International Indemnity Co., 128 Wash. 480, 223 P. 327, 35 A.L.R. 999, where the automobile skidded, leaving the paved roadway, and struck a large tree stump, after which it plunged down a mountainside, and in Moblad v. Western Indemnity Co., 53 Cal.App. 683, 200 P. 750, where the edge of the road gave way, the damages resulting were attributed to the original cause—that which set in motion the operation of physical laws and was therefore the proximate cause of the loss. The subject is fully discussed and authorities cited in Tracy v. Palmetto Fire Ins. Co., 207 Iowa 1042, 222 N.W. 447.

■ Here injury to the automobile from the unauthorized acts of the boy, whether intentional or not, was included in "comprehensive" coverage. The loss cannot be attributed to any cause except these acts, plus the laws of gravity. That his acts were the proximate cause admits of no argument.

■ It may also be argued that by reciting certain specific instances, including theft and vandalism, which are not to be deemed loss caused by collision, all other causes of collision are excluded. The maxim "expressio unius est exclusio alterius" is an aid to construction and not a rule of law. It is not to be arbitrarily applied.[11] We regard the concluding sentence of the paragraph as explanatory and not one of limitation. Loss caused by the impact of a falling object, a bullet, a thrown stone, is not, in the popular sense, a loss caused by collision, and courts have so decided. Nor is "loss caused by" fire, theft, explosion and the like, loss caused by collision, although a collision results. To say that losses so caused "shall not be deemed loss caused by collision" is merely an acknowledgment, an expression of acceptance by way of illustration, of fundamental rules of construction. Had the insurer intended that this final sentence, which to the average member of the public purchasing insurance would seem to be in his favor, was to effect a restriction of liability by extending the exception of "loss caused by collision" to cases where the collision was not the proximate cause of loss, we think

more apt language should have been used, and notice to the public should have been conveyed in a more informative way than by application of the rule of ejusdem generis.

We hold that the judgment should be reversed.

Reversed and remanded for new trial.

HOOD, Associate Judge (dissenting).

I am unable to agree with the majority. It is plain that the insured did not purchase collision insurance. On the front page of the policy were listed numerous coverages. Insured purchased coverage "D," there described as: "Comprehensive—Loss of or damage to the Automobile, except by Collision but including Fire, Theft and Windstorm." He did not purchase coverage "E," described as: "Collision or Upset." In the body of the policy these coverages are described in more detail. Coverage "D" is set forth in the majority opinion. Coverage "E" reads as follows:

"Coverage E—Collision or Upset

"To pay for loss of or damage to the automobile, hereinafter called loss, caused by collision of the automobile with another object or by upset of the automobile, but only for the amount of each such loss in excess of the deductible amount, if any, stated in the declarations as applicable hereto."

It seems plain to me that the insured was not protected from loss caused by collision unless the collision resulted from one of the excepted causes named in coverage "D," and the only two exceptions possibly relevant to the present state of facts are "theft" and "vandalism."

The word "theft" when used in a policy of this type is not to be confined in its meaning to the common-law definition of larceny, but is to be given a meaning broad enough to include all cases where the intent of the taker is "to appropriate the property to a use inconsistent with the property rights of the person from whom it is taken." Pennsylvania Indemnity Fire Corporation v. Aldridge, 73 App.D.C. 161, 165, 117 F.2d 774, 776, 778, 133 A.L.R. 914, 920. However, it is not to be given a meaning contrary to the understanding of the word in common speech and thought. No one, in

---

[10] Columbia Ins. Co. v. Chatterjee, 93 Okl. 249, 219 P. 102, 103.

[11] Neuberger v. Commissioner of Internal Revenue, 311 U.S. 83, 61 S.Ct. 97, 85 L.Ed. 58; United States v. Barnes, 222 U.S. 513, 32 S.Ct. 117, 56 L.Ed. 291.

my opinion, would say or think that the action of the child in this case was even akin to the common conception of theft. Theft in any of its forms implies a taking and from the facts here it seems plain that the child must have been considerably more than startled when the car began to move, and that it is more accurate to say that the child—not the car—was taken. And just as plainly, it seems to me, the child had no intention to appropriate the car to a use contrary to the rights of the owner. I see no reasonable basis for holding that the collision was caused by theft within any meaning of the word, and I understand the majority to agree with me in this view.

Vandalism as the cause of the collision presents a somewhat more difficult question. The word seems to be commonly used in the "comprehensive" coverage clause, which, while of fairly recent origin, has to a large extent replaced the specified hazards policy.[1] Yet there has been called to my attention no decided case construing the word as here used. Indeed, I have found no judicial interpretation of "vandalism," regardless of where used. The New Century Dictionary gives the following definition: "Wilful or ignorant destruction of artistic or literary treasures; hostility to or contempt for what is beautiful or venerable." Other dictionaries give similar definitions. In ordinary speech, however, the word is not limited to the destruction of works of art but has been broadened in its meaning to include destruction of property generally, and it is obvious it was used in the policy in its broader sense. Yet there remains in its meaning the conception of a wilful destruction or at least a wanton indifference to consequences.[2] Mere negligence or carelessness is not spoken of as vandalism. If another car, carelessly or even recklessly driven, had struck insured's parked car, no one would say the resulting damage was caused by vandalism. And I think it would be most uncommon for one to describe the damage in the instant case as the result of vandalism or refer to the child as a vandal.

I cannot agree with the majority that the average child of three and one-half years of age is able to understand fundamental principles of right and wrong. While making no claim to a complete understanding of the mental processes of a child of that age, I think it is a reasonable deduction from the facts here that the child's purpose was to play in the automobile and that he had no intention of damaging or destroying it. His action in entering the car and pulling at the steering wheel and such other devices as may have attracted his attention, would not in common speech be characterized as vandalism. The result of his action was unexpected and unfortunate, but a vandalic quality is not to be ascribed to an act purely on the basis of result. Many works of art have been destroyed under circumstances utterly devoid of vandalism. The child could not have realized the disastrous results to the car or himself which might flow from his playful actions; and in my opinion his actions did not constitute vandalism within the meaning of the policy.

Neither can I agree with the apparent holding of the majority that the loss here was not caused by a collision. Insured's car collided with a parked car and the collision caused the damage. Had the insured purchased collision insurance, I do not think any court would listen to a defense that the loss was not caused by collision but was caused by the acts of the child and therefore not within the collision coverage. If the proximate cause of the loss was the act of the child and not the collision, would the same reasoning be applied had the damage resulted from a reckless or careless driver of another car crashing into insured's parked car? Would it be said in such case that the proximate cause of the damage was not the collision but the reckless or careless act of the driver, and therefore covered by the comprehensive clause?[3]

[1] Kulp, Casualty Insurance (Rev. ed. 1942), 193 et seq.; 5 Appleman, Insurance Law and Practice, § 3222.

[2] The statute (Code 1940, § 22—3112) making the wilful or wanton destruction of, or injury to, public or private property a criminal offense is indexed in our Code under the title of vandalism. Courts have used the word in connection with acts of violence and wilful destruction. See Vaughan v. Kansas City Moving Picture Operators' Union, D.C.W.D.Mo., 36 F.2d 78, 79, where certain acts are described as "vandalism, intimidation, sabotage, and willful destruction"; and De Agostina v. Holmden, 157 Misc. 819, 285 N.Y.S. 909, 918, where reference is made to "use of stench bombs and similar acts of vandalism." In the policy in question vandalism is coupled with riot and civil commotion.

[3] Cf. Rea v. Motors Ins. Corporation, 48 N.M. 9, 144 P.2d 676; Shahin v. Niagara Fire Ins. Co., 265 App.Div. 397, 39 N.Y. S.2d 887; Moore v. Union Mut. Fire Ins. Co., 112 Vt. 218, 22 A.2d 503.

In my opinion insured's loss was caused by collision of his automobile with another object; the collision did not result from theft or vandalism; and the loss was not covered by the policy.