[No. 7321–4–I.   Division One.   June 2, 1980.]

FRONTIER LANES, ET AL, *Appellants,* v. CANADIAN INDEMNITY COMPANY, ET AL, *Respondents.*

*David F. Hiscock, Judith Baker Hine,* and *Keller, Rohrback, Waldo & Hiscock,* for appellants.

*Robert W. Burns* and *Foulds, Felker, Burns & Johnson,* for respondents.

SWANSON, J.—Frontier Lanes and Vitrol, Inc., plaintiffs in an action for declaratory judgment and breach of contract, appeal from the trial court's granting of defendants' motion for summary judgment. Defendants, a group of insurance companies, seek cross review of the trial court's refusal to grant summary judgment on four additional bases.

Frontier Lanes and Vitrol, Inc. (Frontier) operated a north Seattle bowling alley. Canadian Indemnity and the

other insurance companies (Canadian) issued a series of policies to Frontier insuring against specific risks to the building housing the bowling alley. The risks insured against included "direct loss by Vandalism and Malicious Mischief" but did not include water damage. On December 10, 1977, after prolonged heavy rains, half the roof over the bowling alley collapsed. Frontier contends that unknown vandals had thrown cans on the roof, and that the cans had washed into and plugged a downspout, causing water to back up and accumulate on the roof. The weight of the water, Frontier claims, caused the roof's collapse. Canadian denied liability for the damage under Frontier's insurance policies, and Frontier then brought the action resulting in this appeal.

Canadian moved for summary judgment on five grounds.[1] The trial court granted the motion on one of the grounds: that the alleged acts of vandalism (the throwing of cans on the roof) did not cause a "direct loss" within the terms of the policies, because other factors (including heavy rains and the lay of the building) intervened between the time of the alleged vandalism and the roof's collapse.

The court based its ruling on *Bruener v. Twin City Fire Ins. Co.*, 37 Wn.2d 181, 222 P.2d 833, 23 A.L.R.2d 385 (1950). *Bruener* held that in determining whether an insurance policy covers a particular loss only the "immediate physical cause of injury" should be considered. *Bruener v. Twin City Fire Ins. Co., supra* at 184. *Bruener* reversed a line of cases that applied the tort rules of proximate cause in determining the existence of insurance coverage. At issue in *Bruener* was an automobile insurance policy that covered

---

[1]These grounds included Canadian's contentions that (1) the collapse of the roof was not a "direct loss" by vandalism or malicious mischief, (2) Frontier did not present evidence to contradict Canadian's assertion that the clogged downspout did not even contribute to the roof's collapse, (3) Frontier's insurance policies specifically excluded damage from "water which backs up through sewers or drains," (4) Frontier failed to demonstrate the occurrence of vandalism or malicious mischief, and (5) Frontier violated conditions of its insurance policies by failing to report alleged prior acts of vandalism and to protect against their recurrence.

loss of or damage to the automobile except by collision or upset. The insured under the policy had an accident in which his car skidded on icy pavement and hit an embankment. He brought an action to recover from the insurance company the amount of damage to the car, arguing that the cause of the accident was not the collision, for which coverage was excluded, but the skidding that preceded it. Under the then existing Washington rule, enunciated in *Ploe v. International Indem. Co.*, 128 Wash. 480, 223 P. 327, 35 A.L.R. 999 (1924), the insured would have recovered. In rejecting the *Ploe* proximate cause analysis, the *Bruener* court observed: "Insurance cases are not concerned with why the injury occurred or the question of culpability, but only with the nature of the injury and how it happened." *Bruener v. Twin City Fire Ins. Co., supra* at 184.

Canadian argues on appeal that *Bruener* requires denial of coverage unless the "immediate physical cause of injury" was the vandalistic act itself. Therefore, Canadian contends that Frontier may not recover here because, even if the alleged acts of vandalism occurred, the "immediate physical cause of injury" was not the throwing of the cans on the roof but the force exerted on the roof by the pond of water. Frontier argues that such a literal application of *Bruener* in cases like this one vitiates insurance coverage for malicious mischief and vandalism. Frontier argues for adoption here of an "efficient proximate cause" rule that, where there is a concurrence of different causes, would attribute a loss to the cause that sets the others in motion.

We agree with Frontier that to apply Canadian's interpretation of *Bruener* to malicious mischief and vandalism cases would weaken if not effectively eliminate that coverage. Canadian's interpretation would deny coverage for damage caused by an instrumentality, not specifically insured against, that was used to carry out an act of vandalism or malicious mischief. An insurance contract "should be given a fair, reasonable, and sensible construction, consonant with the apparent object and intent of the parties, a construction such as would be given the contract by the

average man purchasing insurance." *Morgan v. Prudential Ins. Co.,* 86 Wn.2d 432, 434, 545 P.2d 1193 (1976). Parties to an insurance contract covering acts of vandalism and malicious mischief intend coverage against losses from those acts. Canadian's interpretation of *Bruener* would afford little coverage or none.

Adoption of the rule advocated by Frontier, however, would run counter to the *Bruener* rule, which is still the law in this state. A correct application of *Bruener* to coverage for acts of vandalism and malicious mischief does not extend that coverage to all consequences of those acts. Rather, we read *Bruener* to require that a loss is attributable to vandalism or malicious mischief if the immediate physical cause of that loss was the vandalistic or malicious act itself or an instrumentality employed directly by the wrongdoer to carry out that act. This interpretation is consistent with *Bruener*'s rejection of a tort proximate cause analysis in insurance cases and is calculated to give effect to the intention of parties contracting for coverage against vandalism.

Applying this interpretation to the instant case, we affirm the trial court's holding that the collapse of the roof of Frontier's building was not a "direct loss" from vandalism or malicious mischief. Neither the throwing of the cans nor the cans themselves were the immediate physical cause of the roof's collapse. Assuming Frontier's theory to be correct, only through the confluence of an unlikely set of circumstances did the placement of the cans on the roof contribute to the roof's collapse and Frontier's injury. Frontier could not reasonably have expected to be covered for that eventuality when it contracted for insurance coverage.

Summary judgment should have been granted on another basis as well. Questions of causation aside, the alleged throwing of cans on Frontier's roof did not constitute an act of malicious mischief and vandalism within the policies' definition of those terms. The policies defined malicious mischief and vandalism to mean "only willful and

malicious damage." Property has been damaged "willfully and maliciously" if the damage results from an intentional act from which damage was reasonably expected to result. *See Hatley v. Truck Ins. Exch.,* 261 Ore. 606, 494 P.2d 426, *rehearing denied,* 261 Ore. 606, 495 P.2d 1196 (1972). Even assuming the truth of Frontier's allegations that the cans were thrown on the roof intentionally, they could not have been done so with the expectation that damage to Frontier's building would result. This was not a basis for the trial court's decision, but the trial court may be sustained on any ground within the pleadings and the proof. *Northwest Collectors, Inc. v. Enders,* 74 Wn.2d 585, 446 P.2d 200 (1965); *Lundgren v. Kieren,* 64 Wn.2d 672, 393 P.2d 625 (1964). Therefore, we affirm the trial court's order granting summary judgment on this basis also.

Affirmed.

JAMES, A.C.J., and DURHAM–DIVELBISS, J., concur.

Reconsideration denied July 9, 1980.