QUADRANGLE DEVELOPMENT
CORPORATION, Appellant,

v.

HARTFORD INSURANCE
COMPANY, Appellee.

No. 93–CV–747.

District of Columbia Court of Appeals.

Argued March 3, 1994.
Decided Aug. 18, 1994 *.

Nathan I. Finkelstein, Bethesda, MD, with whom Joan Slous, Washington, DC, was on the brief, for appellant.

George E. Reede, Jr., Baltimore, MD, for appellee.

Before STEADMAN and SCHWELB, Associate Judges, and BELSON, Senior Judge.

BELSON, Senior Judge:

Quadrangle Development Corporation and Hartford Insurance Company dispute insurance coverage for damages arising out of a business interruption at a Hartford insured property, the Washington Grand Hyatt Hotel.[1] On August 20, 1989, extensive damage to one of the hotel's switchboards necessitated the suspension of electric power to the hotel for twelve hours in order that repairs could be made. After a trial without jury, the trial court concluded that Hartford was not liable under the terms of the policy for this interruption because the damage was proximately caused by electric arcing, a specifically excluded cause of loss.

Quadrangle makes essentially two arguments on appeal: (1) that the trial court applied an erroneous definition of "fire" in concluding that Quadrangle failed to show that the damage was caused by fire (recovery for damage caused by fire is allowed under

---

* Docket number corrected by subsequently filed order.

1. Quadrangle alleged total losses as a result of the business interruption of $152,623, a portion of which was covered under the terms of a separate insurance policy. Quadrangle made a claim for $38,364 under the policy at issue in this case.

an exception to the exclusion for electric arcing); and (2) that the trial court improperly relied on the concept of proximate cause to render inconsequential, for the purpose of determining coverage, the failure of a "pringle" switch which, if it had operated properly, would have stopped the flow of electricity to the switchboard when the electric arcing reached a certain intensity, thereby limiting the damage by significantly reducing the duration of the business interruption.

This case was tried without a jury and, therefore, on review we will set aside the trial court's judgment only "for errors of law unless it appears that the judgment is plainly wrong or without evidence to support it." D.C.Code § 17–305(a) (1989); *see Burns v. Hanover Ins. Co.*, 454 A.2d 325, 328 (D.C. 1982) (trial court's interpretation of insurance contract affirmed on appeal absent a showing of error of law). Finding no such infirmity in the judgment, we affirm.

## I.

The insurance contract at issue here includes a section titled "Causes of Loss—Special Form." Therein, a number of exclusions from the insurance company's coverage are set forth. Section B.2. states in pertinent part:

> We will not pay for loss or damage caused by or resulting from any of the following:
> a. Artificially generated electric current, including electric arcing, that disturbs electrical devices, appliances or wires.
> "But if loss or damage *by fire* results, we will pay for that resulting loss or damage."

(Emphasis added.)

■ Quadrangle presented expert testimony to the effect that, within the insurance business, fire is uniformly defined as combustion with a flame *or* glow. Arguing that the electric arcing on the switchboard produced fire in the form of combustion with a glow, Quadrangle asserted that Hartford owes coverage for the damage claimed under the exception to the exclusion for electric arcing.

The trial court, however, was unpersuaded that the proffered insurance definition of fire was applicable, instead interpreting the contract "in light of common human experience" and employing the "common sense" definition of fire which requires the presence of a *flame*. Considering both the general guidelines set forth in our case law for the interpretation of insurance contracts and the evidence presented at trial, we are satisfied that the trial court's determination is not erroneous.

■ "[A]ny exception in a policy of insurance altering the terms of general liability is to be taken and construed most strongly against the insurer." *Unkelsbee v. Homestead Fire Ins. Co.*, 41 A.2d 168, 170 (D.C. 1945) (internal quotation omitted). "[I]f there are a number of reasonable readings of a policy provision, the insured is entitled to the one favoring coverage." *Continental Casualty Co. v. Beelar*, 132 U.S.App.D.C. 1, 2, 405 F.2d 377, 378 (1968). Nevertheless, we are to give the words used in an insurance contract "their common, ordinary, and ... 'popular' meaning." *Unkelsbee, supra*, 41 A.2d at 170. "The clear meaning will be adopted whether favorable to the insured or not." *Medical Serv. of District of Columbia v. Llewellyn*, 208 A.2d 734, 736 (D.C.1965).

In this instance, the policy's fire exception to its cause of loss exclusion for damage resulting from electric arcing did not admit of various and competing "reasonable readings." As the trial court stated, in its common and ordinary usage, "fire" indicates the presence of a flame. Incident reports prepared by the District of Columbia Fire Department and the hotel's own security personnel, introduced into evidence at trial, are consistent with the trial court's definition in that they noted the presence of smoke, but nevertheless concluded that no *fire* had occurred. Hartford also presented expert testimony that the damage to the switchboard was caused solely by electric arcing.

Furthermore, the trial court's definition of fire gives meaning to both the electric arcing exclusion and to the exception to it that provides compensation for damage resulting from fire. If Quadrangle's expansive definition of fire were accepted it would be difficult to hypothesize any instance of electric arcing which would not also be deemed a fire and give rise to liability. Indeed, at one point,

Quadrangle's expert witness described an electric arc as a "very intense fire," and confirmed that he believed that "arcking [sic] and fire are one and the same thing."[2] The trial court correctly rejected a definition of fire that would have read the arcing exclusion out of the contract.[3]

## II.

The switchboard damaged in this incident was equipped with two safety devices, only one of which functioned as intended. The pringle switch, which malfunctioned, should have opened automatically to cut off the flow of electricity when the arcing reached an intensity of 1,000 amps. The fuses, which did function properly, cut off the flow of electricity when the arcing reached an intensity of 4,000 amps. If the pringle switch had opened, experts for both parties agreed, the damage to the switchboard, although still extensive, would have been less severe, and the amount of time the supply of electricity to the hotel would have been cut off to facilitate repairs would have been reduced.[4]

 Quadrangle maintains that recovery is not precluded by the cause of loss exclusion for electric arcing because the failure of the pringle switch was a concurrent or subsequent cause of the damage at issue here. Quadrangle bases this argument on the proposition that the sort of proximate cause analysis usually applicable does not control determinations of liability under § B.2. Quadrangle states that the differing language describing the scope of the § B.1 and § B.2 exclusions "alters the doctrine of proximate cause" with regard to § B.2.[5] Quadrangle

reasons, apparently, that if the language of the § B.1 exclusion (not applicable here) has been fashioned to extend its reach to damages caused "indirectly" or to circumstances in which another cause "contributes concurrently or in any sequence to the loss," it must follow that § B.2, which lacks such expansive language, will reach fewer losses than would normally be excluded as having been proximately caused by a cause of loss specified in § B.2.

Contrary to Quadrangle's contention, we find that *Unkelsbee's* articulation of the "usual rule" in this jurisdiction, 41 A.2d at 171, *supports* the trial court's conclusion that, in contrast to determinations under § B.1, the concept of proximate cause usually applied in insurance contract cases controls coverage determinations under § B.2. Where § B.1 is applicable, the insurance company need not prove that the excluded cause of loss was the *proximate cause* of a claimant's damages because qualifying words, *see id.*, allow the denial of liability where the excluded cause is, *inter alia*, merely an *indirect* cause of damage. The broad sweep of the § B.1 exclusion reaches damages not proximately caused by the excluded risk. To the contrary, under the language of § B.2, which controls this case, denial of a claim may be sustained only where the company shows that the excluded cause *proximately* caused the damage claimed. In short, we share the view obviously held by the trial court that the § B.2 exclusion applicable here is defined by the doctrine of proximate cause, while the § B.1 exclusion for earthquakes, nuclear hazard, etc., has a greater reach, excluding also

---

**2.** In contrast, Hartford's expert testified that although electric arcing may produce the same type of damage that fire does and that fire can follow arcing, the two processes are distinct and cannot occur simultaneously.

**3.** *See Aetna Ins. Co. v. Getchell Steel Treating Co.*, 395 F.2d 12 (8th Cir.1968) for a discussion of whether, under different circumstances, damages were attributable to electric arcing or to fire.

**4.** Quadrangle's expert estimated that if the pringle switch had opened the business interruption would have lasted three to four hours rather than 12 hours.

**5.** The introductory paragraph for § B.1 exclusions (which exclusions include, among other

things, earth movement, governmental action, nuclear hazard, war and military action) states:

> We will not pay for loss or damage caused *directly or indirectly* by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

(Emphasis added.)

In contrast, the introductory paragraph for § B.2 exclusions (which exclusions include, among other things, electric arcing, wear and tear, explosion of steam boilers, and mechanical breakdown) states:

> We will not pay for loss or damage caused by or resulting from: . . . .

damage that was brought about only indirectly by the specified cause.

In this instance the trial court's finding that electric arcing proximately caused the claimed damage is clearly sustainable.[6] Although the failure of the pringle switch allowed the arcing to continue longer than it otherwise would have, the pringle switch did not produce the damage independently of the arcing, and did not play a role that would undercut the proposition that arcing proximately caused the damage, as the concept of proximate cause is applied in insurance coverage disputes.

In *Unkelsbee*, an insurance contract case, we recognized that proximate cause is "the efficient cause, the one that necessarily sets the other causes in operation," distinguishing it from causes that are "merely incidental." 41 A.2d at 171 (quoting *Aetna Insurance Co. v. Boon*, 95 U.S. 117, 130, 24 L.Ed. 395 (1877)).[7] *Accord, Metropolitan Title Guarantee, Co. v. Gildenhorn*, 102 U.S.App.D.C. 28, 30, 249 F.2d 933, 935 (1957); *American Ins. Co. v. Keane*, 98 U.S.App.D.C. 152, 159, 233 F.2d 354, 360–61, *cert. denied*, 352 U.S. 913, 77 S.Ct. 147, 1 L.Ed.2d 118 (1956); *Graham v. Public Employees Mut. Ins. Co.*, 98 Wash.2d 533, 656 P.2d 1077 (1983) (en banc).

We also quoted with approval in *Unkelsbee* the statement of the Supreme Court that the "proximate cause, as we have seen, is the dominant cause, not the one which is incidental to that cause. . . ." 41 A.2d at 171 (quoting *Aetna, supra*, 95 U.S. at 130). *See also Frontis v. Milwaukee Ins. Co.*, 156 Conn. 492, 242 A.2d 749 (1968) ("where there is a concurrence of two causes, the efficient cause—the one that sets the others in motion—is the cause to which the loss is to be attributed, though the other cause may follow it and operate more immediately in producing the disaster"); *Sabella v. Wisler*, 59 Cal.2d 21, 27 Cal.Rptr. 689, 377 P.2d 889 (1963) (same); COUCH, *supra* note 7, at § 74.-711.[8]

The question of proximate cause is generally held to be one for the trier of fact. COUCH, *supra* note 7, at § 74.700. We take the trial court's statement that "the concomitant failure of the pringle switch to close off the flow of electricity [9] at 1000 amps, does not obviate the fact that damages resulted from electrical arcking [sic]" to be a determination that the arcing was, under the circumstances of the case, the efficient and dominant cause of the damages at issue. That

---

**6.** Specifically, the trial court found:

I am persuaded that when this contract says, damages caused by or resulting from any of the following, that the concomitant failure of the pringle switch to close at 1000 amps, does not obviate the fact that damages resulted from electric arcking [sic].

In that sense, I believe that the defense argument on . . . proximate cause is the more compelling and convincing argument.

**7.** Somewhat similar formulations may be found expressed in negligence actions in this jurisdiction. *See, e.g., District of Columbia v. Freeman*, 477 A.2d 713, 715–16 (D.C.1984) (citing STANDARDIZED CIVIL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA No. 5–11 (rev. ed. 1985) which includes the following: "it must be shown that the injury or damage was either a *direct* result or a reasonably probable consequence of the act or omission" (emphasis added)); *Wagshal v. District of Columbia*, 216 A.2d 172 (D.C.1966) (proximate cause is "that cause which, in its natural and continual sequence, unbroken by any efficient intervening cause, produces the injury and without which the result would not have occurred" (quotation omitted)).

We note, however, that the concept of proximate cause in insurance contract actions is not

identical with that concept in tort actions. *See* COUCH ON INSURANCE 2D § 74:705 (1983). While there is some difference of opinion on this point, *see* 5 JOHN A. AND JEAN APPLEMAN, INSURANCE LAW AND PRACTICE § 3083 (1970), our opinion in *Unkelsbee* obviously contemplates such a difference.

**8.** A New York case involving electric arcing, *Home Ins. Co. v. American Ins. Co.*, 147 A.D.2d 353, 537 N.Y.S.2d 516 (1989), is consistent with this conclusion although it dealt with a different sort of fact pattern. In *Home Ins.* escaped steam from an open drain line "set the stage" for arcing to occur in the electric system of an insured property. Although the escape of steam was a link in the chain of events that resulted in electric arcing and damage, the court found that "the escape of steam was the remote and not the proximate cause of the loss." *Id.* at 537 N.Y.S.2d 517. Rather, "the efficient or dominant cause of the loss was the short circuit in the electrical system. . . ." *Id.*

**9.** The trial court at times referred to the failure of the pringle switch to "close," apparently in the sense of cutting off the flow of electricity. Technically, however, it is the opening of the switch that interrupts the flow of electricity and stops arcing.

ruling is "not clearly wrong" in light of the evidence of record and the authorities on proximate cause in insurance contract cases discussed above. It follows that the damages sought were properly excluded under the contract.

The judgment of the trial court is hereby *Affirmed.*